OLIVE O. SAWYER, ET AL. *v.* SARAH EMELINE CHURCHILL
    and ZEBEDEE P. CHURCHILL'S ADMINISTRATOR.

October Term, 1904.

Present:   ROWELL, C. J., TYLER, START, WATSON, HASELTON, and
                    POWERS, JJ.

Opinion filed February 20, 1905.

*Husband and Wife—Contract in Fulfilment of Ante-Nuptial
    Contract—Specific   Performance—Contemplated   Separa-
    tion—Public Policy—"To Wit" in Contracts—Considera-
    tion—Widow's Waiver—V. S. 2532.*

When a woman, by her written and sealed contract expressed to be
    in consideration of $300, paid her by her husband, released him
    from all claims which she, as his wife, might have upon him,
    that release exhausted the consideration; and a subsequent pro-
    vision of said contract, whereby "for said consideration" she con-
    veyed to his children all interest which, as his widow, she might
    have in his estate, was without consideration.
The phrase "to wit," when used in a recital in a written contract, in
    referring to a date, has no materiality.
The widow's waiver, contemplated by V. S. 2532, is of some provision
    the benefit of which she is to get upon or after her husband's
    death.
The State is, on grounds of public policy, interested in the perma-
    nency of the marriage relation; and courts of equity will not en-
    force the performance of contracts tainted with an understanding,
    contemporaneous with the marriage, looking to a possible or
    probable future separation, and tending to effect such a separa-
    tion.
A court of equity will not enforce a written and sealed contract, exe-
    cuted and delivered by a woman to her husband within five
    months after their marriage, whereby, in consideration of $300,
    paid her by him, she releases him from all claims which she, as
    his wife, may have upon him, and which recites that it is in ful-
    filment of a contract made between them on their wedding day in
    which she agreed to so release him for $300.

APPEAL IN CHANCERY. Heard on Sarah Emeline Churchill's demurrer to the bill, at the December Term, 1903, Windsor County, *Munson*, Chancellor. Demurrer sustained, and bill dismissed, as to the demurrant, with costs.

The orators appealed.

The contract sought to be enforced is as follows:

"Whereas I, Sarah E. Churchill, have heretofore to wit: on the 21st day of January, 1898, entered into a contract with Z. P. Churchill, my husband, in which for the sum of Three Hundred Dollars I agreed to release him from all claims which I, as his wife might have upon him, and whereas said sum has been to me in hand paid, and the receipt of which I hereby acknowledge.

Now therefore, I, Sarah E. Churchill, in consideration of said sum of three hundred dollars, do hereby release said Z. P. Churchill from all claims which I as his wife may have upon him, and hereby agree to maintain myself in sickness or in health so that neither I nor any one in my name or behalf shall hereafter have any claim upon him whatever.

And I further, for said consideration, do hereby release, assign and convey to Olive O. Sawyer, Mark Z. P. Churchill, Addie B. Crowell, Edna M. Bradley and Lucy I. Fletcher, children of the said Z. P. Churchill, or their heirs, all right, title, interest or claim, which I, the said Sarah E., may have as a widow in or to the estate of said Z. P. Churchill, including right of dower or homestead therein.

In witness whereof I hereunto set my hand and seal at in the State of Vermont, this 7th day of June, A. D. 1898."

Sarah E. Churchill.    (L. S.)"

*Gilbert A. Davis* for the orator.

The orator's only remedy is in equity. *Mann* v. *Mann Est.,* 53 Vt. 48-56; *Graves* v. *Wakefield,* 54 Vt. 313; *Meech* v. *Estate of Meech,* 37 Vt. 414; *Chaffee* v. *Chaffee,* 70 Vt. 231.

The contract has been fully performed on the part of Zebedee, and the parties cannot be placed in *statu quo. Coolidge* v. *Brigham,* 1 Met. 547; *Allen* v. *Edgerton,* 3 Vt. 442; *Hammond* v. *Buckmaster,* 22 Vt. 378; 2 Parsons on Contracts, 679; *Beed* v. *Blanford,* 2 Young & J. 278; *Norton* v. *Young,* 8 Greenl. 30.

*Hunton & Stickney* for defendant.

The agreement is against public policy, and not binding upon the widow, if she elects to waive it. Whether she may waive it is discretionary with the probate court. *Bethel Sch.* v. *Sheldon,* 71 Vt. 95; *Mann v. Mann,* 53 Vt. 48.

HASELTON, J. This is a bill in chancery brought by the children of Zebedee P. Churchill, deceased, against Sarah Emeline, his widow, and against the administrator of said Zebedee. The bill sets up among other things, that said Sarah Emeline was the third wife of said Zebedee and not the mother of any of his children; that she was married to him January 21, 1898, and that she lived with him only about five months, when by mutual consent a separation took place, and that they ever after lived apart from each other, the said Zebedee dying December 17, 1902; that after said separation, said Sarah Emeline did nothing towards the support and care of said Zebedee, who was an old man in need of care, comfort, and assistance.

The bill further states that June 7, 1898, which was within five months after the marriage, the said Zebedee and the said Sarah Emeline entered into a certain written and

sealed contract which is set forth. This instrument, however, recites a contract made between husband and wife on their wedding day, by virtue of which the wife should release the husband from all claims which she, as wife, might have upon him, upon the payment by him to her of the sum of $300.00. The instrument further recites the payment of the $300.00 and proceeds as a release from her to him of all claims upon him as wife, and an agreement to maintain herself in sickness or in health and without any claim upon him by her or in her behalf. In referring to the date of the wedding as the date of the contract, the phrase "to wit" is used, but this instrument is not a piece of pleading and the phrase has here no materiality. The bill further sets out that the husband paid the $300.00, and that this instrument was thereupon delivered by the said Sarah Emeline to the said Zebedee, and that he accepted it, and retained possession thereof until his death. It would appear, then, that contemporaneously with the contract of marriage solemnized by the State, there was an agreement between the parties that marital rights and obligations should cease whenever the husband should pay the wife the $300.00 specified. To avoid harsh phraseology, the marriage seems to have been experimental, so far as the parties thereto could make it so; a travesty of marriage and a mockery of marriage vows.

The instrument further recites that for the "same consideration" the said Sarah Emeline releases, assigns, and conveys to the orators all right, title, interest or claim which she "may have as widow" in or to the estate of her said husband. But according to the recitals of the instrument, this consideration was exhausted in the procurement of the release of the claims of the wife to support, and so there was no consideration for the assignment to the orators of any claim which she "as widow" might thereafter have upon her hus-

band's estate.  There was no consideration for the assignment
moving from the orators, or from the husband or any one
else for the benefit of the orators.  The bill further sets out,
in effect, that there was no rescission, or attempted rescission,
of the contract in the life-time of Zebedee, and that after
his death, on the 25th day of July, 1903, and not before, she
offered to "return" the principal sum of $300.00 to the ad-
ministrator of said Zebedee.  It appears from the bill that
this offer was in the presence of the probate court, and that
the orators protested that the administrator should not accept
the offer.  It further appears from the bill that June 6, 1903,
the said Sarah Emeline filed a widow's waiver as full and
complete as could be filed under the Vermont Statutes and
amendments thereto, and demanded an allowance out of the
estate.  However, the widow's waiver, contemplated by the
statute, is of some provision of some kind the benefit of which
she is to get upon or after the husband's death.  *Chaffee* v.
*Chaffee,* 70 Vt. 231, 40 Atl. 247; Acts of 1896, No. 44.  The
bill further states that the sum of $300.00 paid to said Sarah
Emeline was a just, adequate and reasonable share for her
out of the estate of her husband.

The bill prays that specific performance on the part of
said Sarah Emeline Churchill may be decreed, that temporary
restraining orders may be made, and that general relief may
be granted.  On demurrer the bill was dismissed and the
orators appealed.

We think that the court of chancery was right in dis-
missing the bill.  Separation agreements, not contemplated at
the time of marriage, and not brought about by a frivolous
view of the marriage obligation, may come about for such
reasons, and may be of such a character, that courts of equity
will recognize them and will enforce the specific performance
of pecuniary agreements relating thereto.  But the State is,

on grounds of public policy, interested in the permanency of a marriage relation which it has sanctioned, and courts of equity ought not to enforce the performance of contracts tainted with an understanding, contemporaneous with the marriage, looking to a possible or probable separation in the future, and, in the nature of things, tending to bring such a separation about. *Squires* v. *Squires,* 53 Vt. 208, contains in the opinion of the Court delivered by Judge Veazey, a valuable discussion of separation agreements, and points out those that courts may recognize, at least for some purposes. A lengthy and able review of the history and doctrine of agreements for separation is found in the recent case of *Foote* v. *Nickerson,* 70 N. H. 496, 48 Atl. 1088.

But there is hardly need in this case to refer to the very numerous and very conflicting cases which relate either to separation agreements, or to some of the incidents thereof. The bill, as drawn in this case, seems to have to do with an option of separation, taken and given on the occasion of the marriage,—an option of such a character that, in any resulting state of things, a court of equity ought not to interpose.

*The decree of the court of chancery dismissing the bill is affirmed and the cause is remanded.*