MARY F. CLARK, complainant,

*v.*

WILLIAM A. CLARK et al., defendants.

[Decided January 5th, 1935.]

*Mr. Meyer Lobsenz,* for the complainant.

*Mr. Randal B. Lewis,* for the defendant.

VAN WINKLE, A. M.

The parties were married in December, 1926, the husband being approximately twenty years older than the wife, who had been divorced from her first husband. Counsel for the wife stated that "the courtship was clandestine" so far as the husband's daughter by his first wife and his friends were concerned. This daughter, Ruth C. Gorman, is a defendant. The wife alleges, in her bill, that the husband abandoned her

on February 22d, 1933; that on March 4th, 1933, a separation agreement was executed by her and him wherein he promised to pay her $25 a week, and to make transfers of certain personal property to her; that in May, 1933, she asked her husband to return to her, and he refused to do so; that at the time of the marriage he was possessed of property; that to avoid supporting her "he sold the tangible evidence of his wealth without consideration," and conveyed the same to his daughter, Ruth C. Gorman; that he was well employed as a salesman; that he is now receiving a pension and refuses to do any work; that he abandoned her in May or June, 1933, and has refused and neglected to support her. And the bill states that the wife "desires" to abrogate the separation agreement. The bill prays for separate maintenance, security therefor, sequestration, injunction, discovery; and that Ruth C. Gorman be decreed to transfer the property received by her from the husband to a receiver; and also that the transfers to Ruth C. Gorman be set aside and declared to be null and void.

The husband sets up the separation agreement defensively, and annexes a copy of it to his answer. In his answer he avers that he is now receiving $20 a week from his pension, and that he. has been paying his wife one-fourth thereof "pursuant to the proportion of his earnings established by the terms of the separation agreement." He admits that he has refused to live with his wife, but denies that he refuses to provide for her. And he contends that should the agreement not be efficacious, the sum of $5 a week, which he is paying, is reasonable maintenance.

The agreement discloses that the husband, acting under it, transferred to his wife all the household furniture in the residence which had been occupied by him and the wife and in which the wife has continued to live separately; that he agreed to sign thereafter, when called upon to do so, any instrument that would convey this residence to the wife, or to anyone she might designate; and also that he transferred an automobile to the wife. The agreement provides that the husband pay the wife $25 a week for maintenance and other necessities, the first payment to be made February 5th, 1933, and payments to be made "so long as he is receiving his

present salary," which was a salary of $100 a week, and that "if his present salary shall be reduced or shall in anywise be changed from the present amount, then the said weekly sum to be paid by the husband to the wife shall be mutually agreed upon in conformity with such reduction or change."

The actions of the wife which led the husband to leave the home, while distressing to him, did not amount to a matrimonial offense by the wife. Then came the separation agreement, which justified the husband in his separate living. However, as the wife thereafter requested the husband to return to the home, or to resume living with her, and he refused, which request and refusal he admits were made, it must be held that the husband has unjustifiably abandoned the wife. The wife had the right, despite the separation agreement, in the absence of wrongdoing on her part, to request the husband to resume living with her, and his refusal constituted an abandonment. *Power* v. *Power, 65 N. J. Eq. 93; 55 Atl. Rep. 111; 66 N. J. Eq. 320; 58 Atl. Rep. 192; Devine* v. *Devine, 89 N. J. Eq. 51; 104 Atl. Rep. 370.* But the wife has not restored to the husband, nor offered to restore, the personal property now in her possession, which she received under the separation agreement; nor has she ceased to exercise dominion over the residence. So she has not abrogated the separation agreement. A separation agreement is not abrogated by the institution of a suit by a wife for separate maintenance. (See for a holding to the same effect in divorce suits, *Rennie* v. *Rennie, 85 N. J. Eq. 1; 95 Atl. Rep. 571; Halstead* v. *Halstead, 74 N. J. Eq. 596; 70 Atl. Rep. 928.*) The husband's promise to pay a weekly sum, and the transfer of the property, and the dominion over the residence, were, and remain until the wife repudiates the separation agreement, in substitution of the husband's legal duty to maintain the wife. (See *Sabbarese* v. *Sabbarese, 104 N. J. Eq. 600; 146 Atl. Rep. 592.*) The wife may not successfully invoke a decree for maintenance unless she lets go of the agreement and its benefits. However, as the parties have been fully heard, not only may a decree for separate maintenance be made, if the wife is entitled to separate maintenance, conditioned upon her letting go of the benefits

of the separation agreement, but such a decree should be made, with the purpose of obviating further proceedings.

The Fraudulent Conveyance act of 1919 (*Cum. Supp. Comp. Stat. p. 647*) has been held to be unconstitutional to the extent that it attempted to give this court authority to hear and determine actions for debt. Without a judgment at law or the establishment of a lien this court has no jurisdiction to entertain the bill of a creditor to set aside a fraudulent conveyance of a debtor. *Gross* v. *Pennsylvania Mortgage and Loan Co., 104 N. J. Eq. 439; 146 Atl. Rep. 328; United Stores Realty Corp.* v. *Asea, 102 N. J. Eq. 600; 142 Atl. Rep. 38.* However, a wife suing for separate maintenance, necessarily sues in this court, by virtue of the express provision of the twenty-sixth section of the Divorce act.

A wife's right to set aside a transfer by her husband, fraudulent as to her, depends upon her status as a creditor, not as a wife. And the same questions are to be answered where a wife sues to set aside a transfer by her husband alleged to be fraudulent as to her, as where any creditor of the husband sues to set aside a transfer alleged to be fraudulent as to such creditor. Is she in fact a creditor? Has her claim been established by judgment or decree? Is the transfer fraudulent as to her? Either she is a creditor or she is not. Either the transfer is fraudulent as to her, a creditor with her claim established, or it is not. There cannot be a fraudulent conveyance unless there is a defrauded creditor. The only difference is that a wife may establish her debt against her husband in this court. If a wife obtains a decree for separate maintenance, and the husband makes the payments called for by the decree, a transfer by the husband is not to be set aside, at the instance of the wife, merely because it may be that at some future time the husband may possibly fail to make such payments.

A wife is not necessarily entitled to separate maintenance, merely because she is a wife; nor is she entitled to alimony, merely because she obtains a decree of divorce. The wife may be, for instance, a woman of large property, and the husband a penniless and helpless invalid with no possibility of means. The circumstances may be such that an abandoning husband,

who is not actually maintaining his wife, may not, by any interpretation, be said to "refuse" or to "neglect" to support his wife. An abandoning husband may be a pauper, presently and potentially. The right to alimony or separate maintenance is not an absolute right; it rests in the sound discretion of the court. There must be an order or decree for alimony or for separate maintenance, before alimony or separate maintenance can be said to be due. A wife, as such, has no interest of any kind in her husband's personal property; but where she obtains a decree for separate maintenance she thereby becomes a creditor of the husband; and, like the debt due any creditor, if the debt is paid a transfer by the husband is not to be set aside.

In a separate maintenance suit a wife may be allowed a weekly sum for her maintenance from the date of the filing of the bill. *Tehsman* v. *Tehsman, 93 N. J. Eq. 422, affirming, Idem. 76; 117 Atl. Rep. 34.* Where an order for maintenance is made pending suit, and such order is not complied with, the decree may direct the payment of maintenance from the date of such order, the better to assure collection of the amount due under it; and where a decree so providing is made, the wife thereby becomes a creditor of the husband.

Where a decree for separate maintenance is made, and the possibilities and probabilities of the future are considered, the decree may provide, under the statute, for security for compliance with its terms. And security may be provided by or from property that has been transferred by the husband fraudulently as to the wife, as well as in other ways. If the husband pays what the decree provides shall be paid, and he has property, other than the property he has transferred, or income, from which he is probably able to continuously pay amounts to accrue under the decree, and he probably will permanently remain in the state after the decree is entered, no sufficient reason appears why security should be given.

Counsel for the defendants contends that "complainant cannot combine in her bill the two causes of action, that for maintenance, and that to set aside transfers on the ground of fraud." Although the only authorities referred to by counsel in support of this contention are those relating to

another of his contentions, namely, that "complainant cannot come into court to set aside any alleged fraudulent transfer because she has no decree or judgment or lien against the defendant," I understand that he objects that the bill is multifarious. But it is hardly to be doubted that under the liberalizing that came with the statute and the rules now governing this court, that the old-time objection of multifariousness has been substantially done away with. *Newark Brass Plate and Engraving Co.* v. *Citizens National Bank, 90 N. J. Eq. 282; 110 Atl. Rep. 230; Gierth* v. *Fidelity Trust Co., 93 N. J. Eq. 163; 115 Atl. Rep. 397.* "The additional rules and procedure adopted in 1915 are not only in harmony with the rule of convenience as theretofore recognized in regard to multifariousness, but peculiarly accentuate that rule." *Metropolitan Life Insurance Co.* v. *N. and R. Building Co., 110 N. J. Eq. 316; 159 Atl. Rep. 792.* The rule "theretofore recognized" was one of convenience resting upon a consideration of what will best promote the administration of justice without multiplying unnecessary litigation on the one hand, or drawing suitors into needless and unnecessary expense on the other. *Lehigh Valley Railroad Co.* v. *McFarland, 31 N. J. Eq. 730; Conover* v. *Sealy, 45 N. J. Eq. 589* (at *p. 592*) ; *19 Atl. Rep. 616.*

Even in a divorce suit, and in an annulment suit, a non-matrimonial cause of action may be joined with leave of the court (chancery rule 20). And where several issues are involved in a single cause, decrees, interlocutory or final, as to one or more of such issues may be made separately at any stage of the proceedings (chancery rule 15). Where there are several separable and distinct issues in a cause, final decrees upon one or more of such issues may be entered separately. *McGill* v. *Trust Company of New Jersey, 94 N. J. Eq. 657; 121 Atl. Rep. 760.* These things being so, no reason is perceived why causes of action may not be joined where they have a connection, where the evidence pertinent to one may be pertinent to the other or others. Circuity of action should be discouraged. A joinder of causes of action should be encouraged. There is a connection, usually, between a claim for separate maintenance, and a claim that a transfer of

a husband is fraudulent as to the wife. And some of the evidence in support of the one claim may be, and probably is, in most cases, pertinent in support of the other.

While it is true that until a wife gets a decree, until she is a creditor, she may not have a transfer by her husband set aside as being fraudulent as to her, it may be that when a suit is ripe for a decree for separate maintenance, it may also be ripe for a decree setting aside a fraudulent transfer by the husband, if both separate maintenance and the setting aside of such transfer are sued for. And it may be that after a decree is entered for separate maintenance, a wife, having been made a creditor of the husband by virtue of the decree, may be entitled thereafter to have a further decree in the same suit setting aside a transfer by the husband as being fraudulent as to her where such further relief has been sued for and the proper proof has been made. In *David* v. *David, 111 N. J. Eq. 493; 162 Atl. Rep. 538,* I advised a decree for separate maintenance; and thereafter, on proof that the husband had not complied with the decree which made his wife his creditor, and that he had absconded, I advised a further decree setting aside transfers which had been proved in the suit to be fraudulent as to the wife, the wife having sued in the suit for such relief.

Several mortgages, two of which were owned jointly by the husband and his deceased first wife, and in which the daughter had an ownership interest, and some shares of stock, were assigned by the husband to the daughter in 1928. There is no proof that these transfers were fraudulent as to the wife. The husband, at the time the transfers were made, was earning a good salary, with no expectation that the salary would be changed; and it was not changed until five years afterward, when he was pensioned, as a result, apparently, of the business depression and the husband's age. The husband continued to own his interest in the residence. Unless we are to begin with an assumption that what the wife describes as a happy marriage condition in 1928, should be viewed at that time as a condition which would probably be converted into a pursuit by her of separate maintenance in 1933, no argument for the setting aside of these transfers

begins to form at all. The wife knew of these transfers before she executed the separation agreement in 1933, and she in no way impugned them until she filed her bill in this suit. She was fully advised by her own counsel who drew the separation agreement, was present when it was executed, and who testified on the hearing in the suit when called by the husband.

Certain shares of stock in two corporations were transferred by the husband to his daughter shortly before the separation. No evidence was given that these shares have any value. If I am to indulge in surmise, I should say that they have little value and produce small dividends, or none at all. However, considering all the evidence, in determining the amount of separate maintenance, I am viewing these shares as being in the control, if not in the present possession or ownership, of the husband. And I am advising a decree for separate maintenance because I determine that the amount the husband is now paying is not a suitable amount.

When the use or the benefit of property transferred by a husband on the eve of a separation from his wife remains with him, there is both sound sense and justifying logic in holding, as I do, that the value of such property, or the yield therefrom, is to be regarded as a factor in determining the amount of separate maintenance to be paid by the husband. It was held in *Dougan* v. *Dougan, 90 Minn. 471; 97 N. W. Rep. 122,* that where the court finds as a fact that the husband has transferred property to third parties for the purpose of defrauding his creditors, that in fixing the amount of alimony to be awarded his wife, it is proper to take into consideration the value of the property thus transferred, even where the purpose may not have been to defraud the wife. And in *Griffith v. Griffith (Mo.), 190 S. W. Rep. 1021,* it was held that where a husband, on the eve of separating himself from his wife, executed his note to his sister as a gift, with the obvious purpose of reducing alimony, that the note should not be listed as a liability of the husband when the amount of alimony is fixed.

A memorandum specifying the details and conditions of the decree to be advised has been delivered to counsel.