ISABELLE M. FRENCH *vs.* JOHN W. McANARNEY, guardian.

Norfolk. May 18, 1934. — May 1, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Husband and Wife,* Husband's duty to support, Antenuptial contract. *Contract,* Validity.

An antenuptial contract, made by a man and woman who were married after the birth of an illegitimate child of theirs, the woman desiring to have the man "right what she considered a great wrong and injustice to the child" and being "willing to forego any provisions for her own support" "in order to have the child legitimatized," was contrary to public policy and unenforceable in so far as it provided that the woman should not claim any support from the man, and did not release him from the ordinary duty of supporting her as his wife after the marriage.

PETITION, filed in the Probate Court for the county of Norfolk on December 7, 1933, seeking an allowance for the support of the petitioner under G. L. (Ter. Ed.) c. 201, § 43.

The petition was heard by *McCoole,* J., and was dismissed. The petitioner appealed. Material facts reported by the judge are stated in the opinion.

The case was argued at the bar in May, 1934, before *Rugg,*

C.J., *Crosby, Donahue,* & *Lummus,* JJ., and afterwards was submitted on briefs to all the justices.

P. J. *McDonald,* for the petitioner.

H. R. *Donaghue,* for the respondent.

RUGG, C.J.   This is a petition for an allowance for her support by a wife against her husband, hereafter called the respondent.   He is under guardianship as an insane person. He is represented by a guardian appointed over his person and estate.   There is no report of the evidence.   The judge of probate upon request filed a report of material facts.   Thus it appears that the petitioner obtained a divorce from her former husband in 1911.   The respondent was her attorney in that proceeding.   Thereafter the relations between the two became intimate.   In 1916 she gave birth to a boy. The respondent was father of the child and made acknowledgment of that fact.   He supported the child.   The respondent then was a married man.   After the decease of his wife, the petitioner and respondent were married in 1930.   Before the marriage they entered into an antenuptial contract.   The petitioner entered into it in good faith and was represented by counsel.   By its terms she agreed to release all the rights she had, statutory or otherwise, by reason of the marriage, "in any land, real estate, or interests in the name of" the respondent, and "to make no claim or demand in any place, or any way, for any support by" the respondent, or "for any sum or sums of money whatever."   The outstanding desire on the part of the petitioner was to have the respondent "right what she considered a great wrong and an injustice to the child, and in order to have the child legitimatized she was willing to forego any provisions for her own support."   The judge of probate states that he found that the petitioner in entering into the agreement released the respondent from contributing to her support.   This is interpreted to mean that on the facts found and reported he ruled as matter of law that the petitioner was not entitled to prevail and entered a decree dismissing the petition.   At the same time a decree was entered upon another petition (from which no appeal appears to have been taken) ordering the pay-

ment by the respondent of a weekly contribution for the support of the child. No question concerning that proceeding is before us.

The question of law to be decided is whether on the facts found the decree dismissing the petition was right. Specifically, the question is whether the agreement made between the parties prior to the marriage is an effectual release of the husband's ordinary duty to support his wife.

There is nothing in this record to throw doubt upon the validity of the marriage. The finding is express to the effect that, after the death of the wife of the respondent, the petitioner and the respondent were married. That must be accepted as true. There is no finding to support an inference that the petitioner did not enter into the marriage with a purpose to conform to all the duties arising from the relation.

The status of the parties as husband and wife was fixed when the marriage was solemnized. A marriage cannot be avoided or the obligations imposed by law as incident to the relation of husband and wife be relaxed by previous agreement between the parties. Marriage is not merely a contract between the parties. It is the foundation of the family. It is a social institution of the highest importance. The Commonwealth has a deep interest that its integrity is not jeopardized. "It is against the policy of the law that the validity of a contract of marriage, or its effect upon the status of the parties, should be in any way affected by their preliminary or collateral agreements." *Franklin* v. *Franklin*, 154 Mass. 515, 516. *Hanson* v. *Hanson*, 287 Mass. 154. *Mirizio* v. *Mirizio*, 242 N. Y. 74, 83, 84. *Hills* v. *State*, 61 Neb. 589, 598–599. The moment the marriage relation comes into existence, certain rights and duties necessarily incident to that relation spring into being. One of these duties is the obligation imposed by law upon the husband to support his wife. *Fisher* v. *Drew*, 247 Mass. 178, 182. This duty exists although the wife is living apart from the husband by his expressed or implied consent. *Sturbridge* v. *Franklin*, 160 Mass. 149. *Mayhew* v. *Thayer*, 8 Gray, 172, 175. The enlarged contractual capacity con-

ferred upon married women by G. L. (Ter. Ed.) c. 209, § 6, does not relieve the husband from this liability. *Thibeault* v. *Poole,* 283 Mass. 480, 484. Parties may by antenuptial contract vary substantially the property rights of the spouses arising out of marriage. This right exists at common law and by statute. *Miller* v. *Goodwin,* 8 Gray, 542. *Eaton* v. *Eaton,* 233 Mass. 351. G. L. (Ter. Ed.) c. 209, § 25. See *Welch* v. *King,* 279 Mass. 445, 449. Postnuptial contracts may change the rights of parties with respect to property and to cohabitation provided they are fair, made with due formality, and contemporaneously with or after an actual separation. *Terkelsen* v. *Peterson,* 216 Mass. 531. *Aitchison* v. *Chamberlain,* 243 Mass. 16, 21. Some latitude is allowed parties in such cases in adjusting their mutual property interests. ·*Page* v. *Trufant,* 2 Mass. 159. *Winn* v. *Sanford,* 148 Mass. 39. *Bailey* v. *Dillon,* 186 Mass. 244. In those cases there is always the possibility that the agreement may be terminated by the resumption of cohabitation. In all of them alternative, fair, material provision is made for the wife in consideration of the release of the husband's duty to support. The power of the courts to grant alimony in case of divorce is not hampered by such agreement. *Wilson* v. *Caswell,* 272 Mass. 297. *Oakes* v. *Oakes,* 266 Mass. 150. *Hyman* v. *Hyman,* [1929] A. C. 601.

The case at bar does not afford any evidence that it was based upon considerations respecting the property or property rights of either of the parties. No property was involved. Nothing was paid to or by the petitioner or to or by the respondent. The marriage does not appear to have had relation to property. If not based upon the ordinary incidents of mutual affection and respect, it obviously relieved the petitioner in part from being in the position of having an illegitimate child due to contact with the respondent; and entering into the marriage well may have been the performance by the respondent of a strong moral duty to his natural son and the mending of a wrong to the petitioner. The alleviation of mental suffering and the removal of a sense of humiliation appear to have been

operating motives inducing the petitioner to enter into an agreement to forego provision for her own support. These sentiments afford no basis in law for a contract to relieve the respondent from the obligation to support his wife after the marriage. The interests of society and the public welfare in maintaining unimpaired the integrity of the marriage relation and its essential obligations are superior to the apparent relief gained by the respondent under such a contract. These parties have undertaken to establish a peculiar and restricted marital relationship for a particular purpose, excluding one of the primary incidents of marriage. The failure of this attempted abrogation of the duty of the husband to support the wife does not affect the validity of the marriage. The public interest in the integrity of marriage requires that its underlying rights and obligations be not subject to variation by agreement of the parties such as here shown. This conclusion is but a new application of the principle declared in *Franklin* v. *Franklin,* 154 Mass. 515. The great weight of authority in other jurisdictions supports the view that such an antenuptial contract as is here in issue is contrary to public policy and is unenforceable. *Williams* v. *Williams,* 29 Ariz. 538, 544. *Smith* v. *Smith,* 154 Ga. 702. *Warner* v. *Warner,* 235 Ill. 448. *Ryan* v. *Dockery,* 134 Wis. 431. *Clopton* v. *Clopton,* 162 Cal. 27. See also *Corcoran* v. *Corcoran,* 119 Ind. 138; *Ott* v. *Hentall,* 70 N. H. 231. So far as we are aware, there are no adjudications to the contrary.

The result is that the petition ought to be considered anew in the Probate Court in the light of the principles stated in this opinion.

*Decree reversed.*