WALTER H. CLEARY, AS TRUSTEE OF ALICE M. LAFRANCE *v.* ERNEST S. LAFRANCE.

February Term, 1938.

Present: POWERS, C. J., SLACK, MOULTON, SHERBURNE and BUTTLES, JJ.

Opinion filed May 3, 1938.

*Raymond L. Miles* for the defendant.

*Sterry R. Waterman* for the plaintiff.

MOULTON, J. This is an action in contract. The declaration alleges that on June 4, 1932, the defendant Ernest LaFrance and Alice M. LaFrance, his wife, were, and had been for some time then past, living separate and apart from each other; that, desiring to come to an amicable settlement, they executed a written contract with Walter H. Cleary, the plaintiff, as trustee, the material parts of which were as follows: In consideration that he was released from all obligation and liability for the future support of his wife the defendant transferred to the plaintiff, as trustee, certain household goods and furnishings, agreed to discharge certain outstanding indebtedness, and to pay each week to the plaintiff, as trustee, a certain sum of money, for the care and support of his wife; in consideration of these weekly payments to the plaintiff, to be used for her support, and the payment of the specified debts, Alice agreed with the plaintiff, as trustee, that she would undertake and assume her own support, without further expense to, or liability on the part of, the defendant; in consideration of the performance of the agreement by the defendant and his wife, the plaintiff agreed to accept the trust, to receive the money and to disburse it for the support of Alice; and ''the further consideration for this contract is the agreement of the other parties to the contract and the performance of the contract by each of them.'' It is alleged that Alice M. LaFrance has performed her part of the contract, and the plaintiff, as trustee, has been willing to perform his part, and has done so except in so far as he has been prevented by the failure of the defendant to carry out his promises and undertakings, but the latter has failed to make all the stipulated weekly payments, and is now in arrears, to recover which this action is brought.

The defendant demurred upon the grounds that the contract was void as being without consideration, and against public policy, in that it contemplated a continued voluntary separation between husband and wife, and the prevention of a reconciliation between them, and was an agreement by mutual consent for a separation from bed and board. The demurrer was overruled in the trial court, and the cause is here on defendant's exceptions.

■ However askance the law may once have looked upon agreements, contemplating the separation of husband and wife, they are no longer regarded with such disfavor as to condemn them under all circumstances. It is now well settled in England, and in the great majority of jurisdictions in this country, that it is not against public policy to allow the spouses, where the separation has already taken place, or is immediately to take place, fairly to define by contract their mutual rights and obligations with respect to property and to the wife's support whether such agreement is made directly between the spouses or through the intervention of a trustee. *Peters* v. *Peters,* 20 Del. Ch. 28, 169 Atl. 298, 301, 302; *Grime* v. *Borden,* 166 Mass. 198, 199, 200, 44 N. E. 216; *French* v. *McAnarney,* 290 Mass. 544, 195 N. E. 714, 98 A. L. R. 530, 532; *Clark* v. *Fosdick,* 118 N. Y. 7, 22 N. E. 1111, 1112, 1113, 6 L. R. A. 132, 16 A. S. R 733; *Winter* v. *Winter,* 191 N. Y. 462, 84 N. E. 382, 16 L. R. A. (N. S.) 710, 713, 714; *Van Koten* v. *Van Koten,* 323 Ill. 323, 154 N. E. 146, 50 A. L. R. 347, 350; *Aspinwall* v. *Aspinwall,* 49 N. J. Eq. 302, 24 Atl. 926, 927; *Clark* v. *Clark,* 13 N. J. Misc. 49, 176 Atl. 81, 83; *Walker* v. *Beal,* 9 Wall. 743, 750, 19 L. ed. 814, 817; *Carey* v. *Mackey,* 82 Me. 516, 20 Atl. 84, 85, 9 L. R. A. 113, 17 A. S. R. 500; cases cited annotations, 1 L. R. A. 512; 12 L. R. A. (N. S.) 848, 50 A. L. R. 352; 3 Williston on Contracts, p. 3042, par. 1742; Restatement of Contracts, par. 584; Peaslee, ''Separation Agreements under the English Law,'' 15 Harvard Law Review, 638. As Sir George Jessell, Master of the Rolls, said in *Besant* v. *Wood,* L. R. 12 Ch. Div. 605, 620: ''For a great number of years both ecclesiastical judges and lay judges thought it was something very horrible, and against public policy, that husband and wife should agree to live separate; and it was supposed that a civilized country could no longer exist if such agreements were enforced by courts of law, whether ecclesiastical or not. But a change came over judicial opinion as to public policy, other considerations arose, and people began to think that, after all, it might be better and more beneficial for married people to avoid in many cases the expense and scandal of suits of divorce by settling their differences quietly by the aid of friends out of court, although the consequence might be that they would live separately; and that was the view carried out

by the courts when it became once decided that separation deeds *per se* were not against public policy.''

■ Our own decisions are in harmony with this view. In *Squires* v. *Squires*, 53 Vt. 208, 38 A. S. R. 668, a postnuptial sealed agreement, signed by the husband and the father of the wife, as the latter's agent, providing that the spouses should live separate and apart, that the husband should surrender to the wife all the property that belonged to her before the marriage and should pay certain sums for her benefit, and for the benefit of her daughter, and that the wife should release her dower and homestead rights and support herself, was held under the circumstances of the case to be a defense to a petition for divorce subsequently brought by the wife. In the opinion (pp. 210, 211), Veasey, J., quoted with approval the words of Cooley, C. J., in *Randall* v. *Randall*, 37 Mich. 563, that ''when a separation has actually taken place, or it has been fully decided upon, and the articles contain a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during the coverture, no principle of public policy is disturbed by them * * *.'' In *Canning* v. *Canning*, 87 Vt. 492, 496, 497, 89 Atl. 1088, Ann. Cas. 1916C, 344, it seems to have been recognized that articles of separation are valid as provisions for maintenance, if fair and free from fraud, when the separation already exists or has been fully decided upon prior to and apart from the agreement, although it was doubted that a stipulation against future cohabitation would be in accord with public policy. In *Sawyer* v. *Churchill's Admr.*, 77 Vt. 273, 59 Atl. 1014, 107 A. S. R. 762, the parties entered into an agreement, at the time of their marriage, to the effect that marital rights and obligations should cease whenever the husband should pay the wife the sum of $300. A written postnuptial contract referred to the former agreement, and recited the payment of the money; the wife's release of all claims against her husband, and her agreement to support herself. A demurrer to a bill for the specific performance of the latter agreement was sustained, the transaction being rightly characterized (p. 276), as ''a travesty of marriage and a mockery of marriage vows.'' But the court, speaking through Mr. Justice Haselton, said (p. 277): ''Separation agreements, not contemplated at the time of marriage, and not brought about by a frivolous view of

the marriage relation, may come about for such reasons, and may be of such a character that courts of equity will recognize them and will enforce the specific performance of pecuniary agreements relating thereto.'' In *Barron* v. *Barron,* 24 Vt. 375, 398, it was said that a postnuptial agreement whereby the husband renounces all claim or marital right to the future services of the wife, and to support from her property, and leaves such property for her support and that of her children, made without the intervention of a trustee, will be sustained in equity. In *Collins* v. *Estate of Collins,* 104 Vt. 506, 513, 162 Atl. 361, a postnuptial separation agreement, providing in part for the division of certain personal property, otherwise assumed to be valid, was held to be unenforceable because induced by the fraudulent misrepresentations of the wife. In *Bodwell* v. *Bodwell,* 66 Vt. 101, 104, 105, 28 Atl. 870, the contract was held not to have been performed by the husband and hence to be unenforceable after his death by those who stood in his right, although it was left undetermined whether the contract was such that equity would specifically enforce it, whether it was fair and just, and whether it would bar the wife of her homestead, dower and other statutory rights. *Mann* v. *Mann's Estate,* 53 Vt. 48, involved an antenuptial contract, by which the bride agreed to accept certain yearly payments of money in lieu of her prospective dower rights, and to claim no homestead out of her husband's estate. While it was held that the contract not to assert the right to the homestead was unenforceable against the widow by the representative of her deceased husband's estate, it was recognized (p. 55), that a postnuptial contract might, in a proper case, be upheld and enforced in equity.

The contract before us cannot be said to be against public policy. At the time of its execution the separation was already in existence. There is nothing in its terms that would be a bar, or even a hindrance, to a reconciliation and the resumption of marital relations; it is not to be construed so as to effect a permanent separation when a different construction is possible. *Carl* v. *Carl,* 166 N. Y. S. 961, 962. Nothing appears to warrant a suspicion that it is the result of fraud or duress. There is no claim that it is unfair or inequitable in its provisions; indeed, in the absence of a showing to the contrary, it is presumptively fair. *Daniels* v. *Benedict* (C. C. A.), 97 Fed. 367, 370; *Morton* v.

*Fuller,* 48 Idaho, 203, 281 Pac. 377, 378. It has been fully performed by the wife and by the trustee to the extent of his ability. The husband alone is in default.

The mutual promises of the parties to the agreement supply an ample consideration. *Huffman* v. *Huffman,* 311 Pa. 123, 166 Atl. 570, 572; *Aspinwall* v. *Aspinwall,* 49 N. J. Eq. 302, 24 Atl. 926, 927. "The husband's duty to support his wife, and her right to compel him to do so in one way or another coupled with her promise to demand no more in the way of support than the contract calls for, are sufficient to constitute a consideration for his promise." *Peters* v. *Peters,* 20 Del. Ch. 28, 169 Atl. 298, 301. And see *French* v. *McAnarney,* 290 Mass. 544, 195 N. E. 714, 98 A. L. R. 530, 532. Here, the husband's contract is supported by the contract of the trustee on behalf of the wife. Williston's Walds' Pollock on Contracts (3rd Am. ed. from 7th Eng. ed.), 416.

The statutory disability of contract between husband and wife (P. L. 3074) presents no impediment to the proceeding. Such contracts, if fair and just, are enforceable in equity, *Travelers' Ins. Co.* v. *Gebo,* 106 Vt. 155, 162, 170 Atl. 917. This is an action at law, but the agreement is with the trustee, and the promises and undertakings of the husband and wife are not between themselves, but severally, not jointly, with him. *Grime* v. *Borden,* 166 Mass. 198, 201, 44 N. E. 216. The trustee may enforce the contract at law for the benefit of the spouse whom he represents, and "his name is manifestly introduced in order that an action at law may be maintained rather than a bill of equity, which would be necessary if the contract were directly with the wife." *Whittle* v. *Schlemn,* 93 N. J. 78, 106 Atl. 819, 820. See, also, *Canning* v. *Canning,* 87 Vt. 492, 496, 89 Atl. 1088, Ann. Cas. 1916C, 344.

*Judgment affirmed and cause remanded.*