### Beverly D. Strope v. Glenn W. Strope, Jr.

[303 A.2d 805]

No. 113-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 3, 1973

*Paul, Frank & Collins,* Burlington, for Plaintiff.

*Gilbert Myers, Esq.,* Essex Junction, for Defendant.

**Keyser, J.** This is an appeal by the defendant from the order and decree of divorce issued by the Chittenden County Court on June 26, 1972. The defendant did not contest the divorce below nor does he do so in this Court.

It is only the order to which defendant's appeal is directed. The appeal is based on two grounds, namely: (1) That the trial court abused its discretion in determining what it con-

sidered a just award to the parties as there is no reasonable basis in the evidence upon which its findings can stand; and (2) That the award of alimony is contrary to the evidence and to the stipulation submitted by the parties.

The parties, with the assistance of competent counsel, concluded and filed a stipulation by which they agreed as to custody and support, alimony, property settlement, educational benefits for two children, and insurance coverage.

The case was heard on May 24–25, 1972. At the conclusion of plaintiff's direct testimony on May 24th, the presiding judge asked numerous questions of her and when he finished said:

"THE COURT: May I ask you, gentlemen, what do you mean here in your stipulation, 'The support payments shall continue until William Strope III, is finished college'. Do you anticipate then that would all cease?

MR. COLLINS [plaintiff's counsel]: Yes, Your Honor.

MR. MYERS [defendant's counsel]: That's correct, Your Honor.

THE COURT: We are not satisfied with the stipulation, and give you notice under the Frink case. If you want to give us—Mrs. Strope has no employment and you contemplate ceasing as soon as William is through school?

MR. COLLINS: I believe Mrs. Strope plans to get employment.

THE COURT: Yes, but we're taking it as it now is. When she does work, come in and modify the order. She has no income. I want you to have notice under Frink v. Frink, 128 Vermont, we are not satisfied with the stipulation."

The inference from this discussion is that the court was dissatisfied with the period during which the stipulated support payments were to be made.

At the close of the evidence on May 24, the court continued the case to the next day "for further hearing relative to the financial support of Mrs. Strope." At that time Mrs. Strope testified further concerning that subject matter. The defendant did not testify at either hearing. At the conclusion of the hearing, the court, speaking to defendant's counsel, said:

"THE COURT: Your client didn't think well enough to come here to substantiate this agreement?

MR. MYERS: My client was not here on my advice, Your Honor.

THE COURT: He may regret that. We will take the matter under advisement."

Irrespective of the court's expressed attitude, the evidence showed at that time what property the parties owned and their respective incomes. Defendant's gross annual salary was approximately $20,000.00 and was conceded to be a gross income of $379.00 a week.

Thereafter, on June 26, 1972, the court made its Findings of Fact, Conclusions of Law, and Order without reference to the stipulation entered into by the parties.

In its Conclusions of Law, the court said:

"That despite the warnings given by the Court pursuant to Frink v. Frink 128 Vt. 351, in that the Court was not satisfied with the stipulation of the parties in that it did not adequately protect the plaintiff relative to property division, support and maintenance based on the Defendant's salary, the Defendant failed to testify ...."

A careful reading of the record does not show that the foregoing dissatisfaction was communicated to the parties. The record is void of any statement that the court was rejecting the stipulation in whole or in part. Furthermore, it gave no reason for and basis of its dissatisfaction concerning it except as to the length of time support payments were to be made. This appeared when the court first stated it was dissatisfied and again when the court continued the hearing to the next day "for further hearing relative to the financial support of Mrs. Strope."

The only testimony relative to such financial support was from the plaintiff and at the hearing on May 24 showed the following facts. She and her husband had "entered into a stipulation regarding support, property settlement and custody and so on." She was asked—"And is it satisfactory to you?" and she answered—"Yes."

The plaintiff was not then working as she was on crutches as a result of a broken leg suffered in a skiing accident in February, 1972. The home owned by the parties was listed for sale at a price of $49,500.00 and had an outstanding mortgage of $17,000.00 on it. The defendant was a manager at IBM having a gross salary of about $20,000.00 per year. He owned ten shares of IBM stock having a total value of nearly $4,000.00. He had no expenses other than his normal living expenses.

Mrs. Strope felt she could support herself and minor children on the $120.00 weekly payment provided by the stipulation after vacating the house when it was sold if she got a job. She owned outright (not in trust as the court found) shares of stock valued at $24,000.00 on which she received an annual income of $700.00.

The next day, May 25, the following additional facts were elicited by her testimony. She figured out a budget for herself—current budget and future expenses she thought she would have to have after the house was sold. The amount she needed for the foreseeable future to sustain herself and the two children was $140.00. She could manage on this. She previously had worked as a secretary for an engineer receiving $90.00–$100.00 a week net take home pay. It was her intention to seek a secretarial position again after the house was sold and her leg was better. She felt that the $140.00 weekly payment should be $100.00 for support and $40.00 for alimony. It was her intention after getting suitable employment to have the alimony payments stop as she could manage without it if she had a job.

Mrs. Strope had prepared an estimated expense sheet for her projected expenses when the house was sold and she had to buy another one. She said these expenses (unitemized) amounted to $729.00 a month and included food, clothing, insurance on herself and a mortgage payment on a new house or rent. She said it didn't seem to her that she could get by on less than $140.00 a week "at this time."

During cross-examination Mrs. Strope was asked—"If there's an order granted by the Court in this divorce, what do you feel should happen to the equity in the house you now own? How do you desire that to be distributed?" Her answer was—"Divided equally." And in redirect examination she reaf-

firmed her desire that she still wanted the house sold and the net proceeds "split" between her and her husband. The foregoing are all of the material facts developed by the testimony "relative to the financial support of Mrs. Strope."

The stipulation was prepared by Mrs. Strope's attorney. It provided that the home premises were to be sold and the net proceeds after expenses of sale and the mortgage were to be divided equally between the parties. Also until sold, the plaintiff was to have exclusive possession of the property, and defendant was to make the mortgage payments, and pay the taxes, insurance and repairs. Stipulation, Paragraphs 2 and 3. The court, nevertheless, decreed the entire interest in the homestead premises to the plaintiff subject to her assuming payment of debt thereon.

It also ordered the defendant to pay the plaintiff on account of alimony the weekly sum of $100.00 to begin June 26, 1972, and continue until the plaintiff remarried or deceased. This amounts to $5,200.00 a year. Further, the defendant was ordered to pay for support of the minor child, William, and as aid for the education of Faye, the sum of $100.00 weekly also beginning on June 26 until William reached 18 years of age or is sooner self-supporting, or both children complete their college education. This provision amounts to the additional sum of $5,200.00 a year. The defendant was further required to make the payments (unspecified) on the Chevrolet car decreed to the plaintiff. His shares of IBM stock were also decreed to the plaintiff to be used for the education of Faye and William.

The order of the court included three of the provisions in the stipulation. These related to the custody of the minor child, granting title to the Chevrolet car to the plaintiff with the remaining payments to be made by defendant, and to health and accident insurance on the minor child. In other respects the court substituted its judgment for the agreement entered into by the parties. The defendant does not raise any question by his appeal to the award for child support and education, or to the provision which decreed his IBM stock to the plaintiff, in trust, to be used for the education of their daughter, Faye, and their son, G. William. Faye, age twenty in June 1972, was then a junior (presently a senior) at the

University of Vermont, and G. William, fifteen years old, was then in the eighth grade.

■ The defendant contends that the court was in error as to the provision of its order whereby the home premises in its entirety was decreed to the plaintiff. We are mindful that a trial court is afforded a discretionary latitude in settling marital matters between husband and wife including payment of alimony and a division of property. But there is no area of the law where absolute or unlimited discretion is in effect or empowers the court to impose its will or judgment on the contracting parties. The problem here is whether there was a proper exercise of the judicial function. The stipulation was uncontested. For the court to overturn the agreement, there must be evidence presented from which it can be concluded that the stipulation was unfair, unjust and unreasonable and so found by the court. See e.g., Annot., 5 A.L.R. 823, 828–30 (1920). And the mere statement by the court that it is dissatisfied with the stipulation is an insufficient basis for rejecting any of the terms of the agreement.

■ In divorce proceedings a contract between husband and wife relating to alimony will be recognized and enforced if it appears to the court to be reasonable and fair to the parties and not collusive. *Reynolds* v. *Reynolds*, 53 R.I. 326, 166 A. 686, 688 (1933). The record must demonstrate a compelling reason for the court not accepting the stipulation and a justification of its order.

■■ There is no indication but that the parties carried on their negotiations in good faith in an effort to amicably resolve their difficulties. They are permitted by legislative policy to make their own arrangements in this respect by 15 V.S.A. § 552. In the event there is an agreement, the court is not bound to critically examine a stipulation, without good reason in every case, otherwise the statute would not exist. The status of the stipulation in such a stipulation is a contract, and, if modification is freely indulged or granted without warrant, a party may have forfeited rights or positions of advantage for consideration that suddenly becomes insecure or inadequate. *Braine* v. *Braine,* 127 Vt. 211, 213, 243 A.2d

797 (1968); *Hudson* v. *Hudson,* 130 Vt. 225, 227, 290 A.2d 31 (1972).

■ Nothing appears to warrant a suspicion that the agreement in this case was the result of collusion, fraud or duress. And in the absence of a showing to the contrary, it is presumptively fair. *Cleary* v. *LaFrance,* 109 Vt. 422, 427, 199 A. 242 (1935). There was no evidence or finding in this case which neutralizes this presumption.

Although the *Braine* case, *supra,* was a petition to modify an order in a final divorce decree what appears at page 214 of the opinion is equally applicable here. Justice Barney, speaking for the Court, said: "Certainly fraud, inconscionable advantage, impossibility of performance or hampering circumstances intervening beyond the expectation of the agreeing parties may legitimately appeal to the discretion of the court in amending the agreement. If the order is to be amended, however, there must be sufficient support for the change demonstrated in the findings." Although here a contract and not an order was involved, the corollary is the same.

The plaintiff cites *Frink* v. *Frink,* 128 Vt. 531, 266 A.2d 820 (1970), and *Hall* v. *Hall,* 124 Vt. 410, 206 A.2d 786 (1964), in support of the action of the court. However, in *Frink* v. *Frink, supra,* the Court noted "that *Hall* v. *Hall,* 124 Vt. 410, 206 A.2d 786 (1964), indicates that in Vermont, courts may also make an order regarding alimony contrary to the terms of a stipulation between the parties." This was *obiter dictum* since it was not at issue in that case. The Plaintiff cites this as authority in this case at bar. However, in *Hall* there was an oral stipulation existing between the parties. At the close of the case the court gave an oral statement of its understanding of the oral stipulation and as it intended it should be embodied in a written order. Both parties agreed with the terms stated by the court and a written stipulation, at the instance of the court, was prepared and filed. But the written stipulation contained a provision relative to the length of time alimony payments were to be paid which was different than the written court order. It was solely for this reason that the court in a contempt proceeding did not accept the stipulation in its variance with the court's order. This is not the situa-

tion here and neither *Hall* nor *Frink* are in point in the case before us.

It is stated in *Martin* v. *Martin,* 127 Vt. 313, 248 A.2d 723 (1968), and *Segalla* v. *Segalla,* 129 Vt. 517, 283 A.2d 237 (1971), cited by plaintiff, that a court is not bound in a divorce proceeding to conform to a stipulation entered into by the parties. However, the action of the court is circumscribed by the facts and circumstances established by the evidence presented in the case. In *Martin* the stipulation provided for the care and custody of two minor children being awarded to the maternal grandmother and not the father. And in *Segalla* the question was whether the trial court in its final order and decree must honor the temporary order based on a stipulation of the parties. There was an adequate basis in each case for the court to exercise its judicial discretion as it did.

The contract of the parties as well as the undisputed testimony of Mrs. Strope was that the home premises was to be sold and that she desired the avails from the real property to stand as stipulated. There was no evidence which contradicted this well proved material fact or which established that this provision was manifestly unjust, unreasonable, unfair or overreaching.

Furthermore, the court made no finding in this respect except to state that the property was jointly owned. Neither does the record show that it clearly apprised the parties of its contemplated action nor stated the reasons or basis for such impairment of the contract. See *Mandigo* v. *Mandigo,* 128 Vt. 446, 451, 266 A.2d 434 (1970). The record further shows that this provision was fair and just to the parties and entirely consistent with the facts clearly established by the evidence. The findings do not demonstrate any reasonable basis upon which the substituted provision in the order of the court can stand. We find that the court abused its judicial discretion and it was error for the court not to accept Paragraphs 2 and 3 of the stipulation relative to the home premises.

The defendant further argues that the award of $100.00 a week alimony to the plaintiff is not justifiable in light of the evidence. Mrs. Strope testified that her projected expenses after the house was sold would be $729.00 a month which included a mortgage payment or rent. She also testified it didn't

seem to her she could get by on less than $140.00 "at this time." The court made findings based on this evidence.

The defendant says that the order results in monthly support payments of nearly $900.00. To arrive at this figure he is adding the alimony payments to the support payments of $100.00 a week for the minor child which includes educational benefits for both children, William and Faye. We are concerned here only with the alimony payments as to which the court expressed its dissatisfaction on the ground of inadequacy in the stipulation.

The alimony payments average $433.33 per month. The findings are supported by the evidence and establish sufficient basis to warrant the order as to such alimony payments. The tenor of the hearing on both days clearly demonstrates this subject matter was in a critical situation and known to be by the parties.

Under these circumstances the order as to the weekly alimony payments will not be disturbed. *Mandigo* v. *Mandigo*, *supra*.

*Decree affirmed except Paragraph 3 which decreed the home premises to the plaintiff is struck therefrom; cause remanded with directions to amend the decree to include Paragraphs 2 and 3 of the stipulation relating to the sale of said premises and the equal division of the proceeds.*