### Virginia D. Segalla v. Remo Segalla

[283 A.2d 237]

No. 128-70

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 1, 1971

Motion for Reargument Denied August 30, 1971

*O'Neill, Valente & Carroll,* Rutland, for Plaintiff.

*Bloomer & Bloomer,* Rutland, for Defendant.

**Shangraw, J.** The libellant-wife was granted a divorce from the libellee-husband on the grounds of intolerable severity. The case was heard September 8, 1970. Findings of fact and a decree was filed by the court on the same day. No claim is made in the libellee's brief that the libellant is not entitled to a divorce. There was also decreed to the libellant certain real estate and personal property. Libellee appears primarily concerned with the distribution of the property as decreed. The libellee has appealed from the findings and decree presenting several issues for our consideration.

Some of the pertinent undisputed facts may help in an understanding of the questions and problems here presented. The parties were married in Springfield, Massachusetts on the 30th day of May, 1947. They came to Vermont in 1955 and have lived in Addison and Rutland Counties. While in Vermont the libellee has been in business in Rutland, Mendon, Sherburne and Middlebury, Vermont. These several ventures were generally conducted in the name of the husband. His wife spent much of her time handling the business books and payrolls.

The parties lived and worked together until sometime in February of 1969, at which time the husband's interest in a married woman became evident and the parties separated. At that time the parties were living in their home, owned as tenants by the entirety, and located on the Town Line Road, Rutland, Vermont. This home was worth about $42,000.00 and mortgaged for about $20,400.00.

The libellee left the home sometime in August, 1969, and soon afterwards went to Puerto Rico where he is presently

residing. The married woman with whom he was associated followed him to Puerto Rico with her three children.

As a result of this situation, the libellant became ill, very nervous emotionally, lost weight and has been under a doctor's care since the separation in February, 1969. The libellant is afflicted with glaucoma. She is presently employed as a secretary with take-home pay of about forty-four dollars weekly, but, as stated in the court's findings, ". . . will probably be unemployed due to the incident of glaucoma becoming worse."

The divorce petition was personally served on the libellee in Rutland, Vermont, on August 26, 1969. On August 29, 1969, a stipulation was entered into by the parties, which, among other things, contained provisions that the libellee pay to the libellant $25.00 weekly by way of her support, together with $30.00 monthly to apply on her medical expense. On September 18, 1969, a temporary order was issued by a superior judge which followed the terms of the stipulation.

On August 21, 1970, the court notified attorneys for the libellee that a hearing on the merits of the petition for divorce would be heard on September 8, 1970. This was confirmed by the Rutland County Clerk's office by letter of August 25, 1970. The time for hearing was set to coincide with the opening day of the 1970 September Term of the Rutland County Court.

On August 31, 1970, the libellee, through his attorneys, applied to a Superior Judge or Chancellor to cause the Rutland County Clerk to issue a commission to a designated person to take the testimony of Remo Segalla, who was without the State of Vermont, and residing in Puerto Rico. On the same date attorneys for the libellee filed a motion to postpone the hearing on the merits of the petition for divorce until such time as the libellee's deposition could be taken in Puerto Rico. The motion contained the statement that the libellee would not be present at the hearing on the merits of the divorce petition scheduled to be heard on September 8, 1970.

The hearing in connection with the application to issue a commission and the motion to postpone the hearing was scheduled for 10 o'clock in the morning of September 8, 1970. The hearing was held shortly after the formal opening of the September Term of the Rutland County Court. Each motion was denied and exceptions taken by counsel for the libellee.

A hearing on the merits of the divorce petition immediately followed. Libellee was not present at the hearing nor were any witnesses called on his behalf.

Following is a verbatim statement of the first issue briefed by the libellee.

"Was the denial of libellee's application to issue commission to take libellee's testimony without the state, and the motion to postpone hearing on the merits to take said testimony, and a hearing on the merits immediately thereafter, a denial of due process of law, as set forth in the Fourteenth Amendment of the Constitution of the United States?"

The foregoing brings to the front the question as to whether or not the court was required to cause the Rutland County Clerk to issue a commission to take the testimony of the libellee for use in the divorce action.

In its application to depositions taken outside the State, 12 V.S.A. § 1249 provides:

"Upon the application of a party in a cause pending in county court, a court of chancery or district court, a superior judge, a chancellor or a district judge may cause the respective clerks of such courts to issue a commission . . . to take the testimony of a person residing or being without the state. Notice as the judge or chancellor thinks reasonable shall be given to the adverse party or his attorney."

12 V.S.A. § 1239 provides that depositions may be taken at any reasonable time. This is made applicable to depositions taken outside the state by force of 12 V.S.A. § 1250.

At the outset it is essential to have in mind that no right to take depositions existed at common law. This doctrine has always been strictly construed. *In Re Peters Estate,* 116 Vt. 32, 35, 69 A.2d 281 (1949) ; *Reed* v. *Allen,* 121 Vt. 202, 206, 153 A.2d 74 (1959).

In this jurisdiction we have statutory authority for the taking of depositions. 12 V.S.A. § 1231. This section is patterned after old Rule 26 of the Federal Rules of Civil Procedure. 12 V.S.A. § 1231, *supra,* in part provides that "Any party . . .

may take the testimony of any person, including a party, by deposition . . . ."

The use of depositions in this State is governed by 12 V.S.A. § 1234. This statute is substantially based upon Rule 32 of the Federal Rules of Civil Procedure (former Rule 26).

The portions of 12 V.S.A. § 1234(a)(3) of instant concern read:

> "The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: . . . (B) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition . . . (F) upon application and notice that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."

Libellee asserts in his brief that he was entitled to have his deposition taken prior to the hearing on the merits of the case. In so doing he places emphasis on the above quoted provisions of section 1234 (a) (3), more particularly that portion which provides that "The deposition of a witness, whether or not a party, may be used by any party . . . ."

Neither in argument before the court, nor in his briefs is any claim made that he could not be present at the trial on September 8, 1970. His absence was apparently due merely to the preference to use his deposition rather than to testify orally in court.

Mr. Segalla telephoned the office of his attorneys about August 20, 1970. It was their impression that he was then in Connecticut. He did not give his telephone number and was to call back at three o'clock in the afternoon but failed to do so. His attorneys later contacted him by telephone in Puerto Rico at which time his real estate problems were discussed.

In libellee's motion to postpone the hearing on the merits until such time as his deposition could be taken in Puerto Rico, he therein stated that he had real estate and personal property interests which are complex, some which are jointly owned, some of which are under attachment and other liens,

and some of which are mortgaged. By reason of the complexity of his property interests, this, of itself, is an additional reason why his presence in court would have been helpful by affording the court the opportunity to determine his credibility or by questioning him. See *In re Bolduc's Estate*, 36 Pa. D. & C. 131 (1939).

On August 21, 1970, libellee's attorneys had notice that the case would be heard on its merits on September 8, 1970. Libellee's application for the issuance of a commission was filed with the court only seven days prior to the scheduled hearing on the petition for a divorce. The record fails to disclose any requested hearing on the application prior to September 8, 1970. By this late request the court may well have considered this as an absence of good faith and a desire to prolong the litigation.

This divorce action is an adversary proceeding. It is fundamental in the construction of statutes to ascertain and give effect to the intention of the Legislature. *Davidson v. Davidson*, 111 Vt. 24, 27, 9 A.2d 114 (1939).

█ It is our view that the Legislature, by the use of the word "may" in 12 V.S.A. § 1249, intended that the issuance of a requested commission was discretionary, not mandatory, and that all related matters were to be considered. 23 Am.Jur. 2d, *Deposition and Discovery* § 7, at 360.

█ From what we have above set forth, and the facts and circumstances later developed in this opinion, we find no room to hold that the court abused its judicial discretion by denying libellee's application to take his own deposition or to issue a commission for such purpose.

█ We concede that there are circumstances when a party may cause to be taken his own deposition and use it as evidence at a trial. Federal Rules of Civil Procedure, Rule 32. *Richmond v. Brooks*, 227 F.2d 490, 492 (2d Cir. 1955). The facts and circumstances in the case now considered did not warrant such action.

In libellee's motion to postpone the hearing on the merits of the divorce petition scheduled to be heard at 10 a.m. September 8, 1970, he requested a continuance of the hearing until such time as his requested deposition could be taken. At no

time has the libellee indicated a willingness to personally appear at the trial.

In this motion for a continuance, libellee recited therein that he has real estate and personal property in Vermont which are complex, some of which jointly owned, some under attachment, liens and mortgaged. This motion also contained the statement that he knows no one in Vermont who has knowledge of all his affairs, and desires to give testimony relative thereto so that the Court may know all of the facts relative to property settlement when, and if, a divorce is granted.

█ Libellee's motion for postponement falls short of our rules of practice in county courts. 12 V.S.A. Appendix II, Rule 20 provides that in triable cases "Motions for continuance shall be accompanied by an affidavit stating the reason therefor and the time when such reason was first known." No affidavit accompanied the motion. This failure alone is sufficient to support the court's ruling denying the motion. The absence of an affidavit might have also been a factor in the determination by the court whether the motion for continuance was filed in good faith. *State* v. *Rickert,* 124 Vt. 380, 384, 205 A.2d 547 (1964).

█ The matter of granting a continuance in triable cases is discretionary. Abuse of discretion must clearly appear in order for this Court to interfere. *Richardson* v. *Persons,* 116 Vt. 413, 416, 417, 77 A.2d 842 (1951). Abuse of the trial court's discretion in denying the motion has not been demonstrated. The court's rule must stand.

Libellee, Remo Segalla, is a defendant in the case of *Button Corporation* v. *Remo Segalla and Jennison Engineering, Inc.,* pending before the Rutland County Court, Docket No. 23112. In that case it is claimed that in 1964 Mr. Segalla contracted with Mountain Peak, Inc., to construct the motel building, presently known as Pico Peak Motor Lodge, and that the construction of the sewage system was improper, inadequate and not in accordance with plans. The *ad damnum* of the writ is fifty thousand dollars. Motion has been made to increase the *ad damnum* to ninety thousand dollars.

Pursuant to the provisions of 12 V.S.A. Appendix II, Rule 3A Remo Segalla was required to answer certain written interrogatories in the *Button Corporation* case relating to the construction of Pico Peak Motor Lodge. By paragraph 1 of the

answer Mr. Segalla stated "As far as I know Virginia Segalla of Town Line Road, Rutland, Vermont, has custody of all of the records pertaining to the construction of Pico Peak Motor Lodge. I don't have any in my possession."

On April 28, 1970, the libellee, in the divorce case now considered, filed a motion requesting that an order be issued by the court requiring the libellant to produce and turn over to the attorneys for the libellee the file relating to the construction of Pico Peak Motor Lodge for use in the preparation of a defense in the *Button Corporation* v. *Segalla, et al.* case.

■ The libellee contends that there was error on the part of the trial court by hearing the divorce petition without first disposing of the motion to produce. Just prior to the hearing on the merits of the divorce case only two motions were called to the court's attention, argued and denied: (1) the application to take the testimony of Mr. Segalla, and (2) the motion to postpone the hearing on the merits of the case. Neither was the motion to produce called to the court's attention, nor a hearing requested thereon. At no time on September 8, 1970, did the libellee make a demand on the libellant to produce his file in the *Button Corporation* case, nor, for such purpose, had or did he resort to a subpoena *duces tecum* under 12 V.S.A. § 1691. Furthermore, nothing appears in the motion to suggest that the file in question contained evidence pertinent or relevant to the divorce case. Libellee's claim of error is without merit.

The libellee next urges that the decree of distribution of the assets of the parties is unjust and inequitable. The divorce decree reads:

"Divorce granted the libellant on the ground of intolerable severity. Decree *nisi* to become absolute 31 days from the effective date of this entry. The property owned as tenants by the entirety on Town Line Road, Rutland, Vermont, is decreed to the libellant free and clear of all marital encumbrances, subject however, to all encumbrances, liens, mortgages and attachments from which she will hold the libellee harmless. The shares of capital stock in the Sherburne Corporation are divided equally between the two parties. The Chevrolet Caprice decreed to the libellant. The Dave Dubeau property, the interest

of the co-tenant libellee decreed to the libellant. The interest in the Mountain Golf Association owned by the libellee decreed to the libellant. The note in the amount of $20,000 from the sale of the LaCortina Motel decreed to the libellant free and clear of all marital encumbrances, subject however, to all encumbrances, liens, mortgages and attachments thereon."

The statute providing for the disposition of property of the parties is found in 15 V.S.A. § 751 and states that in granting a divorce the court

". . . shall decree such disposition of the property owned by the parties, separately, jointly, or by the entirety, as shall appear just and equitable, having regard to the respective merits of the parties, to the condition in which they shall be left by such divorce, to the party through whom the property was acquired and the burdens imposed upon it for the benefit of the children."

There was a daughter of the parties. She was not a minor and not mentioned or considered as a dependent in the divorce proceedings.

■ The division of property in a divorce case is a matter of discretion vested in the trial court. *Loeb* v. *Loeb,* 118 Vt. 472, 492, 114 A.2d 518 (1955). In divorce cases the court has wide discretion in making property awards. Unless it appears on review that such discretion has been withheld or abused, the decree as made must stand. *Wacker* v. *Wacker,* 114 Vt. 521, 49 A.2d 119 (1946).

Following notice by libellee's attorneys that the divorce case would be heard on September 8th, they promptly notified him of the date of the hearing, and then discussed with him who was going to testify as to the value, encumbrances, etc., of the property owned by the parties or either of them. Libellee could not suggest any person in the United States who had knowledge of his financial affairs. As to this phase of the case, he intended to rely on his own evidence. Notwithstanding this situation, in his motion filed September 1, 1970, the libellee therein stated that he would not be present at the hearing on the merits on September 8, 1970, and gave no excuse for such absence. The libel for divorce has been pending in court for

more than one year. Lack of co-operation on the part of the libellee appears evident from the record. For reasons best known to him, he was disinclined to appear on September 8, 1970. For all that appears in the record he had ample opportunity so to do.

The final decree contains no provisions for alimony or support. No doubt the trial court considered these factors in the disposition of the property as decreed. Mrs. Segalla testified that the libellee was earning $18,000 annually. Considering all the circumstances, we cannot hold that the court failed to exercise its judicial discretion in the disposition of the property as set forth in the final decree. We cannot say, as a matter of law, that it is unjust or inequitable.

The libellee takes issue with findings 5, 6 and 9 on grounds which are somewhat related. These findings read:

"5. They have been in business in Rutland, Mendon, Sherburne and Middlebury."

"6. The business was conducted generally in the name of the husband but the wife spent much of her time handling the books of the parties."

"9. The parties were apparently living together and working together until sometime in February of 1969, . . . ."

The general tenor of the libellee's contentions as they relate to the above findings are, that he and his wife were not working together, were not in business together, and that the libellant did not spend much of her time handling the libellee's books.

Mrs. Segalla testified that she did all the payrolls and business for her husband. Mrs. Segalla received no compensation for her labors, other than $200.00 for making the LaCortina Motel payrolls in which her husband and others had an interest. Mrs. Mazie Rich testified that she had known the libellant since 1956. Mrs. Rich testified that while the parties were running the Edelweiss Motel in Mendon, Vermont, Mrs. Segalla kept the books and also worked hard in the motel.

Libellant makes no claim, nor does it appear in the evidence, that she is part owner of the enterprises of the libellee

referred to in the decree, other than through stock ownership in the Sherburne Corporation.

Whether the libellant worked "with" or "for" her husband, or were "parties" is of no controlling significance. Rather, it is whether she assisted him in his enterprises. The evidence and the findings clearly establish this to be a fact. At times the libellant assisted the libellee in borrowing money. The evidence clearly establishes the interest taken by her in his business ventures. In the light of the evidence and the generally accepted and apparent meaning of findings 5, 6 and 9, these findings are sustained.

The trial court determined in finding No. 7 that a 1969 Chevrolet Caprice, owned by the parties, is no longer in existence. The evidence clearly establishes that the automobile is in existence, in Mrs. Segalla's possession, and was decreed to her. Libellee contends that either the finding or the decree is incorrect and that one should be corrected. The finding that the automobile was nonexistent does not appear to be anything more than a typographical error and has no effect upon the decree.

Next, the libellee contends that the part of finding No. 8 which states ". . . and the parties are holders of a note in $20,000.00 representing the remaining money due the parties for the sale of the so-called LaCortina Motel, and adjacent white house" is not supported by the evidence.

The libellee contends that there is no evidence that the La-Cortina Motel or the adjacent white house were sold. Libellant admits in her brief that there is no evidence supporting the finding referring to the white house. She claims that such reference is irrelevant.

It is undisputed that Mr. Segalla had an interest in the La-Cortina Motel. It is also undisputed that his interest was purchased by his partners for the sum of $20,000.00 represented by a promissory note payable, as alleged in the divorce petition, to the libellee.

Again the libellee places undue emphasis on that part of the finding which refers to the "parties" as being the holders of this note. The note is presently in the possession of the libellant. The court determined that it should be decreed to

her. It is merely an asset that the court distributed, as it was authorized to do under the statute. It is difficult to imagine how the libellee could benefit even if the word "parties" to which he objects be struck. Libellee's claims concerning finding No. 8 are of no controlling importance in the disposition of the note to libellant in the decree.

Under the stipulation dated August 29, 1969, followed by a temporary order dated September 18, 1969, the libellee agreed to begin construction of a home for the libellant on Lot No. 12, on a plan of lots known as "Killington Heights Joint Venture—1966—Robert M. Aronson". The start of construction was subject to clearing the title. The libellee was not the sole owner of the property and the lot was encumbered by mortgages and other encumbrances. Upon completion of the house and conveyance to the libellant, Mrs. Segalla agreed to transfer, grant, convey and sign over to the libellee any and all interest that she may have had in any other business venture of the libellee, including the home place on Town Line Road. This house on Lot No. 12 was never built.

The Killington Heights property was mortgaged. It was owned by the libellee and his brother, Livio Segalla. Eleven lots were sold to the Wales Real Estate, Inc., for $25,000. Libellant received no portion of the sale price.

Although Lot No. 12 was conveyed to the libellant, an attachment had been previously placed on this property prior to the recording of her deed and not discharged. Lot No. 12 was not referred to in the final decree. Libellee claims that it is a marital asset and should have been considered and disposed of in the final decree. The circumstances surrounding Lot No. 12 were in evidence and known to the trial court. While it could have been disposed of in the decree, the trial court was aware of libellant's ownership, subject to encumbrances thereon. We do not consider its omission in the decree of such importance as to constitute prejudicial error, or require a remand for inclusion therein.

Libellee urges error on the part of the court by not making a finding that the libellee is $8,000.00 in debt. No such finding was requested. No objection was made by the libellee for failure of the court to so find. Libellee now contends that such a

finding should have been made and considered as bearing on the circumstances in which he was left by the divorce. Mrs. Segalla testified that she supposed that these bills would be paid following the closing of the Killington Heights transaction. On direct examination of Mrs. Segalla the following question was asked and the answer thereto given.

"Q. Do you have any judgment or can you tell the Court with any proximation how much money your husband owes that affects you?

A. Well, he owes over $8,000 in bills plus my alimony and he also was going to give me half of the sale of the Middlebury Bowling Lanes which he never did and that was $15,000."

This evidence was before the court. Notwithstanding the absence of findings relative thereto, we must presume that the court had these facts in mind when the final decree was made.

In the temporary order dated September 18, 1969, the libellee was required to pay the libellant by way of support the sum of $25.00 per week beginning August 29, 1969, and continuing on each and every Friday thereafter. Libellee was also ordered to pay the libellant the sum of $30.00 monthly to apply on medical expenses.

Libellee now challenges finding No. 12 which states "There is a temporary order in this case which has not been complied with by the libellee as to either support or medical expenses." He now complains that this finding is ambiguous in that it does not state with clarity whether the libellee has partially complied with the support and medical expense order, or whether he has not complied with it at all.

The undisputed fact is that libellee has not paid any support money or medical payments since November, 1969, except one month during the month of May, 1970. The libellee defaulted in complying with the temporary order and above payments were brought about through URESA proceeding in Puerto Rico. Libellee has since defaulted in making the above required payments. While the libellee has not totally defaulted in compliance with the above order, he has at least not fully complied therewith.

■ While finding No. 12 is subject to different interpretations, it is undisputed that libellee has flagrantly violated the judge's temporary order. Libellee's claim on the point in issue cannot be considered of any consequence.

■ Libellee presents the question as to whether the stipulation of the parties, and the temporary order made in accordance therewith, must be honored by the trial court in its final order and decree. Our answer is in the negative. *Hall* v. *Hall*, 124 Vt. 410, 412, 206 A.2d 786 (1964) ; *Martin* v. *Martin*, 127 Vt. 313, 314, 248 A.2d 723 (1968).

Libellee has particular reference to his agreement, contained in the stipulation, that he would commence construction of a house for the libellant on Lot No. 12 and that his failure so to do was occasioned by the fact that this lot, together with all of his real estate, was attached in the case of *Button Corporation* v. *Remo Segalla and the Jennison Engineering, Inc.* While this may be a reason for libellee's failure to erect the house, we fail to see any bearing on the court's final decree.

In our consideration of the issues presented and a careful review of the record, we find no occasion to disturb the decree. The record supports the decree.

*Decree affirmed.*

**Holden, C.J.,** dissenting. The trial court struck down the libellee's motion to depose and his motion for a continuance with a single ruling. The libellee sought to present his own deposition as an alternative to his appearance in person at the trial. By proceeding to trial forthwith, on the denial of the application to take his out-of-state deposition, the libellee had no opportunity to travel from Puerto Rico to testify in person concerning the disposition of his property in Vermont. Thus both avenues of proof were closed simultaneously. The effect of the ruling has prevented the libellee from making his defense by deposition, or otherwise, at the trial. As I see it, this ruling exceeded the limits of sound judicial discretion and should require a reversal. *Land Finance Corporation* v. *St. Johnsbury Wiring Company*, 100 Vt. 328, 333, 137 A. 324 (1927).

Procedural rules should not be applied in such a fashion as to trench upon a litigant's opportunity to present his case where the attending hardship on his opponent can be cured

by the imposition of reasonable terms. *Harrington* v. *Kingsbury,* 2 Tyler 426, 428 (Vt. 1803). See also *Hyam* v. *American Export Lines,* 213 F.2d 221, 223 (2d Cir. 1954). The failure of the trial court to exercise its discretion in this regard constituted error.

The consequence has been a decree of substantial property interests that is founded on the libellant's evidence alone. And we are called upon to review that result in the narrow light of a one-sided record.

**Barney, J.** (In dissent). I join the Chief Justice in dissent entirely because of the disposition of this case. I agree with the majority that the facts, on their face, support the conclusion that the motions and maneuvers of the libellee were motivated for purposes of delay and obstruction, rather than to generate a good-faith inquiry into the parties' total financial situation. I also agree that delay would be to the serious detriment of the libellant. But that delay has come about anyway, and the means were at hand below to completely dispose of the issue now here. While retaining control of the assets for eventual disposition, it seems to me the court could have put the libellee's contention to the test. He could have been required, within a reasonable time, to either present himself for examination and cross-examination in this jurisdiction, or advance the funds necessary for the libellant's counselled presence at the deposition taking. His contentions, subjected to cross-examination, would then be before the court, and the property disposition made accordingly. If he failed to come forward on either alternative, it would be his option, and he could not bring here the issue raised on this appeal. Since the opportunity to order the same disposition is available here, I respectfully disagree with the entry order of the majority.