## Maelene N. Hopkins v. Leon E. Hopkins, Jr.

[296 A.2d 266]

No. 174-71

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed October 3, 1972

*Lawrence E. Kimball, Esq.,* St. Johnsbury, for Plaintiff.

*Swainbank, Gensburg & Morrissette,* St. Johnsbury, for Defendant.

**Smith, J.** This is an appeal in a divorce case in which the Caledonia County Court issued its Nisi Order on November 3, 1971. The appellant-libellee does not seek a reversal of the Decree of Divorce granted to the libellant, but does ask that

that part of the Order of the Court providing "The Defendant is ordered to pay to the Plaintiff in lieu of alimony or other payment the sum of Fifteen Hundred Dollars ($1,500) within ninety days of said Order" should be stricken and the remainder of the order given effect.

The parties entered into a stipulation, admitted at the uncontested divorce hearing, as to a division of the property. The stipulation provided that the three-family apartment house, owned by Mr. Hopkins in Lyndon Center, Vermont, should be decreed to Maelene N. Hopkins as her sole property, provided, however, that she assume the payment of three mortgages on the property amounting to a little more than Eight Thousand Two Hundred Dollars ($8,200). Mr. Hopkins also agreed to pay the balance due from Mrs. Hopkins to her attorney.

The undisputed evidence was that such stipulation was suggested by Mrs. Hopkins and was agreed to by her husband. The equity in the apartment house was in the neighborhood of Ten Thousand Dollars ($10,000). Mrs. Hopkins, who was employed, lived in one of the apartments, and the other two apartments generated enough income to maintain the entire apartment house.

All of the evidence as to the income and property interests of Mr. Hopkins came from the testimony of Mrs. Hopkins and her mother. The greater part of such evidence was given in answer to questions propounded by the presiding judge. Mr. Hopkins was in the general contracting business, and his books were kept by Mrs. Hopkins up to and until the time of their separation. Her testimony was that he owned a house with approximately fifteen acres of land in East Burke, several lots on Newark Pond, as well as an interest in other property owned jointly with another individual. She also testified that he had liabilities of some Thirty Thousand Dollars ($30,000). She further testified that by giving up all interest in the apartment house to her, he might very well be technically insolvent, and that his current liabilities might, in fact, exceed his current assets. The mother of the libellant, Mrs. Nuland, when questioned by the presiding judge regarding her son-in-law's financial situation, stated, ". . . I think Junior right now has a lot going out than he has coming in. I don't think he has that much actually to give at this time." To

summarize, the undisputed evidence showed that Mr. Hopkins was on the verge of insolvency, and that Mrs. Hopkins, who had employment, was satisfied with the apartment house awarded to her by the stipulation of the parties, which settlement had been suggested by her.

The presiding judge, however, stated that he was not satisfied with the stipulation "pursuant to the *Frink* case". The reference was presumably to the case of *Frink* v. *Frink*, 128 Vt. 531, 266 A.2d 820 (1970), which involved the duty of the court in divorce causes when support of children was an issue under a stipulation, but did not involve the question of support for a wife provided under a stipulation.

At the conclusion of the evidence in the case, the presiding judge made a statement to the effect that "on the basis of the evidence it appears that your client (Mr. Hopkins) perhaps is not providing sufficient funds for Mrs. Hopkins."

The presiding judge then offered to let Mr. Hopkins, who was not then present, to introduce evidence in his behalf at 11 A.M. on the next day, despite the assertions of the counsel for Mr. Hopkins that his client would be out of town on that day. However, no evidence was offered by Mr. Hopkins on the day and time set by the court. The court made no findings of fact in support of the order, none having been requested. The court then made an order following all terms of the stipulation between the parties except that for the support of Mrs. Hopkins, to which was added that Mr. Hopkins was to pay Mrs. Hopkins the sum of Fifteen Hundred Dollars ($1500) within ninety days from the date of the order.

Possibly of some significance in the matter before us is the fact that Mrs. Hopkins submitted no brief here in support of the order of the court, nor did her counsel, although present, present arguments on the matter.

This Court in *Hall* v. *Hall*, 124 Vt. 410, 412, 206 A.2d 786 (1964), has stated that a court entering a decree was not bound by the stipulation between the parties. In fixing the amount of an award of alimony the court is vested with a wide, but judicial, discretion. "If that discretion is neither withheld nor abused, the decision, on general principles, is not subject to review. But if the trial court declines to consider a material fact, well proved, or makes what is mani-

festly an unjust award, this Court will correct the error."
*Shaw* v. *Shaw*, 99 Vt. 356, 358, 133 A. 248 (1926).

It is clear from the record before us that the presiding judge was dissatisfied with the support provisions for Mrs. Hopkins as set forth in the stipulation between the parties. However, he did not make it clear at the hearing below that he would not follow the stipulation in that regard, nor did he in any way indicate what his order would be in the event he did not follow the terms of the stipulation. While he offered Mr. Hopkins an opportunity to present evidence on his own behalf in support of the stipulation, it was done on the part of the court with the knowledge that Mr. Hopkins would be out of town at that particular time. This made the appearance of Mr. Hopkins at that time an obvious impossibility.

But of more importance is the fact that the entire evidence before the lower court was that the support provided for in the stipulation between the parties was fair and just under the then circumstances of the parties. It was so admitted by Mrs. Hopkins, who was entirely familiar with the affairs of her husband. While there was evidence that Mr. Hopkins had other property interests in addition to the apartment house, including some machinery used in the construction business, the testimony of the libellant, and her witnesses, was that Mr. Hopkins was in an insolvent state. We can find no evidence in the record before us that Mr. Hopkins had, or could obtain, the additional Fifteen Hundred Dollars ($1500) which the order of the court compelled him to pay to Mrs. Hopkins within ninety days from the date of the order.

While the lower court was not bound to follow the stipulation of the parties and had wide judicial discretion in awarding alimony to Mrs. Hopkins, it had before it the undisputed evidence that Mr. Hopkins was in a most precarious financial condition. With this knowledge, together with an absolute lack of evidence that he could pay to Mrs. Hopkins any additional alimony if ordered to do so by the court, the court made an obviously unjust award to Mrs. Hopkins, which she did not seek below, nor attempt to defend here.

We find that the lower court abused its judicial discretion in awarding to Mrs. Hopkins the sum of Fifteen Hundred Dollars ($1500) from Mr. Hopkins. However, since the lower

court saw fit to embody all of the other terms of the stipu-lation between the parties in its order under the powers set forth in *Hall* v. *Hall, supra,* we make the following order:

*The order of the Caledonia County Court in the case of Mae-lene N. Hopkins v. Leon E. Hopkins, Jr., dated November 3, 1971, is corrected by striking from such order paragraph 5. Otherwise, said order is to remain in full force and effect.*