2006 VT 40

## Natacha Pouech v. Phillip Pouech

[904 A.2d 70]

No. 04-423

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.),
Specially Assigned

Opinion Filed May 12, 2006

2

*John R. Durrance, Jr.* of *Gaston, Durrance & Fairbanks,* Montpelier, for Plaintiff-Appellant.

*Christopher L. Davis* and *Devin McLaughlin* of *Langrock Sperry & Wool, LLP,* Burlington, for Defendant-Appellee.

¶ 1. **Reiber, C.J.** Wife appeals the family court's decision refusing to allow her to amend her divorce complaint to seek maintenance. We conclude that the family court applied the wrong standard in determining whether to consider her request for maintenance in light of the stipulated settlement that the parties had filed. Accordingly, while we affirm the divorce decree, we reverse the family court's August 5, 2004 decision and remand the matter for the court to reconsider wife's maintenance request and whether to accept or reject the parties' stipulation in whole or in part.

¶ 2. The parties were married in 1981 and separated in 2003. They have three children, born in October 1982, May 1986, and February 1993. After the parties separated, they negotiated a settlement between themselves with the help of a mediator and then a lawyer, who assisted both parties in finalizing a stipulation drafted by husband. The lawyer advised the parties to consult independent counsel. Husband did, but wife did not. On October 20, 2003, the parties signed a document entitled "Stipulation for Temporary and Final Order and Decree of Divorce." The document contains twenty-

five paragraphs that deal with, among other things, parental rights and responsibilities, child support, marital property, and marital debt. The agreement is silent with respect to maintenance.

¶ 3. On October 27, 2003, one week after the document was signed, wife filed the parties' stipulation along with her divorce complaint. She did not check the box on the complaint form that would have indicated she was seeking maintenance. Approximately five months later, before the final divorce hearing, an attorney entered an appearance on behalf of wife and filed a motion to amend the complaint to allow wife to seek maintenance. Husband opposed the motion, arguing that the court should not permit wife to present evidence on the issue of spousal maintenance, and, in the alternative, that maintenance should not be awarded because the stipulation was not inequitable. Over two days in late May 2004, the court held a hearing on wife's motion, and both parties testified.

¶ 4. At the hearing, wife's attorney stated that wife was not asking the court to set aside the whole stipulation. Nevertheless, when the court expressed its belief that opening up the issue of maintenance would effectively require it to consider all financial aspects of the parties' divorce, wife's attorney still insisted that wife wanted maintenance, even if it meant that the stipulation would have to be set aside. On direct examination, wife stated that she knew she had a right to maintenance, but did not ask for it when the parties negotiated the stipulation because of feelings of guilt about leaving her family. Husband testified that wife told him she did not expect him to pay her anything. In a post-hearing memorandum in support of her motion to amend, wife argued that the stipulation should be interpreted to allow her to request maintenance, and that, in the alternative, there was a mutual mistake regarding the issue of maintenance. The principal thrust of her first argument was that, although the parties' stipulation was a binding contract, the absence of any provision on maintenance did not permit the court to assume that the parties had an agreement regarding maintenance. She also contended, however, that the family court had an independent obligation to assure that the stipulation was equitable.

¶ 5. Following the hearing, in an August 2004 order, the family court denied wife's motion to amend. In arriving at its decision, the court noted that wife's attorney had explicitly indicated that wife was not seeking to set aside the agreement on the grounds that its terms were unfair or unconscionable, but rather was arguing only that: (1) because the agreement was silent on the issue of maintenance, the

court had the authority to impose maintenance; and (2) the court could void the agreement based on mutual mistake. With respect to wife's mutual mistake argument, the court found that wife knew she had a right to maintenance but did not ask for it, and that even if she had mistakenly believed she could seek maintenance at the final divorce hearing notwithstanding the absence of a provision on maintenance in the parties' stipulation, it was a unilateral mistake on her part. Further, the court found that the parties intended their stipulation to be a final, complete resolution of their divorce and that the stipulation unambiguously omitted any mention of maintenance. Hence, the court refused to allow wife to seek maintenance over and above the terms of the agreement. On August 26, 2004, the court entered a decree of divorce incorporating the parties' stipulation into the final order. Wife appeals, raising several interrelated arguments.

¶ 6. Wife first argues that, by stating in their stipulation that the terms and conditions of the agreement "may constitute the basis for" a final order and decree of divorce, the parties intended to resolve only those matters explicitly dealt with in the stipulation, but not to the exclusion of other unmentioned matters over which the court had jurisdiction. According to wife, the stipulation's silence on the issue of maintenance demonstrated that the parties had not come to any agreement on that issue, and therefore the court was free to consider it.

¶ 7. We reject this argument because it is contrary to the family court's findings and conclusions, which are supported by the evidence. The court found that wife knew she had a right to maintenance, but nevertheless did not ask for it in the stipulation, and that the parties intended the stipulation to be a complete, final agreement on their divorce.[1] Both the language of the parties' stipulation and the circumstances surrounding its execution support the court's determi-

---

[1] We also find unavailing wife's contention that although the court's decision makes it clear what was decided, one cannot discern from the decision what facts were relied on because the court made only limited findings. Wife did not request findings, see V.R.C.P. 52(a) (trial court shall make findings upon request of party), and, in any event, the court plainly indicated how it reached its decision. See *Maurer v. Maurer*, 2005 VT 26, ¶ 12, 178 Vt. 489, 872 A.2d 326 (mem.) (major purpose of findings is to enable appellate court to determine how trial court reached its decision); *Chaker v. Chaker*, 147 Vt. 548, 549, 520 A.2d 1005, 1006 (1986) (where findings are neither requested nor made, appellate court will assume that trial court had evidence in mind and will examine record to see if result is supportable).

6

nation that the stipulation unambiguously excluded maintenance as part of the parties' intended final divorce settlement. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) (court may consider circumstances surrounding making of agreement in determining whether agreement is ambiguous).

¶ 8. The evidence showed that: (1) the parties signed a twenty-five-paragraph agreement entitled "Stipulation for Temporary and Final Order and Decree of Divorce," which dealt with parental rights and responsibilities, child support, marital property, and marital debt; (2) wife filed the stipulation along with her divorce complaint, in which she did not check the box indicating that she was seeking maintenance; (3) wife testified that she knew she had a right to maintenance but did not ask for any because she felt guilty for having left her family; and (4) husband testified that wife indicated to him that she did not expect him to pay her anything. Given this evidence, the family court did not err in determining that the parties' stipulation unambiguously represented a comprehensive agreement on their divorce. Cf. *Meier v. Meier*, 163 Vt. 608, 609, 656 A.2d 212, 213 (1994) (mem.) (finding no ambiguity in separation agreement that was silent with respect to maintenance).

¶ 9. Further, wife's reliance on the language "may constitute the basis for" in the stipulation is misplaced. Use of the word "may" merely recognized the family court's ultimate authority to resolve matters concerning the parties' divorce and had nothing to do with whether the parties intended their agreement to be final and comprehensive.

¶ 10. Next, wife argues that the family court was obligated to determine whether the parties' stipulation was fair and equitable before incorporating it into its final divorce order. Along these lines, wife also argues that the court should have assured itself that the provisions of the stipulation were within the general parameters of other cases involving similarly situated individuals. According to wife, the instant stipulation provides her with far less than what other litigants have received in comparable situations. Wife contends that if the court had made adequate findings, it would have concluded that the parties' stipulation was unfair and inequitable. Husband responds that wife waived this argument by expressly disavowing it below and by failing to present evidence to back it up.

¶ 11. Before addressing the substance of wife's argument, we reject husband's contention that wife waived it. To be sure, wife stated at the hearing on her motion to amend that she was not asking the

family court to set aside the parties' entire stipulation or claiming that the stipulation was unconscionable. She also acknowledged in her follow-up memorandum of law that the final stipulation was a binding contract between the parties. Nevertheless, when the family court warned her at the hearing that her request for maintenance would most likely require it to open up all aspects of the financial matters contained in the parties' stipulation, she acknowledged that possibility. Further, she argued in her memorandum of law that the family court had an obligation, before the final judgment issued, to consider her request for maintenance, regardless of whether its absence in the stipulation was by mistake or design. In making this argument, wife noted that a separation agreement is fundamentally different from a regular contract because it concerns a relationship that is sanctioned, promoted, and protected by the state. Thus, according to wife, the court had an obligation to consider her request for maintenance as allowed under 15 V.S.A. § 752.

¶ 12. Moreover, wife cited Vermont case law for the proposition that the family court is not bound by the parties' stipulation with respect to maintenance, and husband conceded this point in his memorandum of law, acknowledging that it was for the court to determine whether any inequity would result from enforcement of the agreement. For his part, husband briefly explained why he believed the agreement was equitable, and wife set forth reasons in her memorandum why she believed the agreement was not equitable. Presented with these arguments, the trial court wrestled with questions concerning the extent to which it was free to review the parties' stipulation and consider wife's request for maintenance. Under the circumstances, we find no waiver of wife's argument that the family court had an obligation to determine whether the parties' agreement was equitable before incorporating it into the final divorce order. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("In order to effectively raise an objection, a party must present the issue with specificity and clarity in a manner that gives the factfinder a fair opportunity to rule on it.").

¶ 13. We now turn to the substance of that argument. We start by examining our case law on this subject, which is open to various interpretations. On several occasions, including in a recent case, this Court has cited *Hall v. Hall*, 124 Vt. 410, 411-12, 206 A.2d 786, 787-88 (1964), for the proposition that "in matters of maintenance, the family

court is not bound by a stipulation of the parties." *Boisclair v. Boisclair*, 2004 VT 43, ¶ 8, 176 Vt. 646, 852 A.2d 617 (mem.); see *Hopkins v. Hopkins*, 130 Vt. 475, 477, 296 A.2d 266, 268 (1972) (citing *Hall* for proposition that divorce court is "not bound by the stipulation between the parties" regarding alimony); *Segalla v. Segalla*, 129 Vt. 517, 532, 283 A.2d 237, 245 (1971) (citing *Hall* for proposition that parties' stipulation, upon which temporary order is based, need not be honored by trial court in its final divorce decree); *Frink v. Frink*, 128 Vt. 531, 533, 266 A.2d 820, 822 (1970) (citing *Hall* for proposition that "in Vermont, courts may also make an order regarding alimony contrary to the terms of a stipulation between the parties").

¶ 14. Yet, on at least one occasion, we have also questioned the scope of our holding in *Hall*. In *Strope v. Strope*, 131 Vt. 210, 217-18, 303 A.2d 805, 810 (1973), we noted that the Court in *Hall* upheld the trial court's rejection of a written stipulation that was supposed to memorialize, but in fact was inconsistent with, the parties' previous oral stipulation that had been accepted by the trial court. In *Strope*, we also distinguished other cases in which we held that the trial court had the authority to reject stipulations, suggesting that the trial court's authority was limited by the particular facts and circumstances of those cases, one of which concerned child custody, *Martin v. Martin*, 127 Vt. 313, 248 A.2d 723 (1968), and the other a temporary order, *Segalla*, 129 Vt. 517, 283 A.2d 237. *Strope*, 131 Vt. at 218, 303 A.2d at 810.

¶ 15. In *Strope*, although the wife indicated in response to direct questioning from the court that she was satisfied with the parties' stipulation, the trial court increased the wife's maintenance payments after expressing its dissatisfaction with the stipulation. Noting that the stipulation was uncontested, this Court stated that the trial court could not reject the agreement merely because it was dissatisfied with it, but rather had to state a compelling reason for rejecting it. *Id.* at 216, 303 A.2d at 809. In so holding, the Court cited several standards for reviewing stipulations, including a standard employed in an earlier case involving an action to enforce payments pursuant to a separation agreement — whether the agreement was the result of collusion, fraud, or duress. *Id.* at 217, 303 A.2d at 809 (citing *Cleary v. LaFrance*, 109 Vt. 422, 199 A. 242 (1938)). The Court also suggested that it was irrelevant that the parties' stipulation had not yet been incorporated into an order. *Id.* at 217, 303 A.2d at 810. Ultimately, the Court reinstated the parties' agreement because the evidence established that it was "fair and just." *Id.* at 218, 303 A.2d at 810; see

*Hopkins*, 130 Vt. at 478, 296 A.2d at 268 (overturning trial court's decision to require additional payments to wife where evidence indicated that parties' uncontested stipulation was "fair and just").

¶ 16. Since *Strope*, this Court has continued to send mixed messages as to the standard for reviewing stipulations made in anticipation of divorce. See *Boisclair*, 2004 VT 43, ¶¶ 5, 8 (noting that pretrial agreements are contracts that can be set aside only on grounds sufficient to set aside contract, but also citing *Hall* for proposition that family court is not bound by parties' stipulation regarding maintenance). Compare *Lewis v. Lewis*, 149 Vt. 19, 22, 538 A.2d 170, 172 (1987) ("The court is not bound by stipulations between the parties, but acts within its discretion in making a different disposition of the property based on evidence before it."), with *Bendekgey v. Bendekgey*, 154 Vt. 193, 197, 576 A.2d 433, 435 (1990) ("A pretrial agreement to distribute property is a contract, which the court can set aside only for grounds sufficient to set aside a contract.").

¶ 17. Regarding policy considerations, on the one hand, we have assumed that agreements reached by the parties are preferable to those imposed by a stranger to the marriage — the court. *Kanaan v. Kanaan*, 163 Vt. 402, 413, 659 A.2d 128, 135 (1995); *Bucholt v. Bucholt*, 152 Vt. 238, 241, 566 A.2d 409, 411 (1989). On the other hand, we have recognized that stipulations in anticipation of divorce do not necessarily deprive the family court of its statutorily authorized independent role in distributing the assets of divorcing couples. See *Poulin v. Upham*, 149 Vt. 24, 28, 538 A.2d 181, 183 (1987) ("Even if there had been a stipulation between the parties the court would have to make an independent determination of whether the distribution is equitable."); *Rudin v. Rudin*, 132 Vt. 30, 33, 312 A.2d 736, 738 (1973) (given that court in divorce action has right under 15 V.S.A. § 751 to decree a just and equitable division of property, "the court was not bound by the parties' property stipulation, but was within its discretion in making a new disposition of the property under the evidence before it");[2] cf. *Manosh v. Manosh*, 160 Vt. 634, 636, 648

---

[2] In considering the family court's statutorily authorized role in resolving marital disputes, we do not find it significant that 15 V.S.A. § 751(a) provides that the court "shall" settle the property rights of the parties upon motion of either party, while 15 V.S.A. § 752 provides that the court "may" order either spouse to pay maintenance. The fact that the family court has the discretion to award maintenance does not

A.2d 833, 836 (1993) (mem.) ("Where there is no § 751 motion, however, the family court has no independent obligation to review an agreement unless it is submitted by the parties to be incorporated in the divorce order.").

¶ 18. Significantly, we have emphasized a strict contractual standard for reviewing divorce stipulations most often in situations where the parties' stipulation was uncontested at trial. E.g., *Damone v. Damone*, 172 Vt. 504, 512, 782 A.2d 1208, 1214 (2001); *Strope*, 131 Vt. at 216, 303 A.2d at 809. But see *Bendekgey*, 154 Vt. at 196-99, 576 A.2d at 435-36 (declining to overturn agreement husband contested at trial because husband failed to prove grounds sufficient to overturn contract). For example, in *Damone*, after the divorce complaint was filed, the parties executed an agreement dividing a personal injury settlement attributable to husband's accident during the marriage. Although "both parties testified that they wanted the terms of the agreement to control distribution of the settlement proceeds, and the court to enforce that agreement," *Damone*, 172 Vt. at 512, 782 A.2d at 1214-15, the trial court refused to enforce the agreement but instead distributed the settlement proceeds more favorably to the wife. After stating that the parties' agreement controls unless a challenger demonstrates that it should be set aside on grounds sufficient to set aside a contract, we concluded that because "the court failed to adhere to an *unchallenged* property distribution agreement, and failed to timely notify the parties of its intent to do so, the court's distribution of the settlement proceeds contrary to the parties' agreement was an abuse of discretion." *Id.* at 512, 782 A.2d at 1215 (emphasis added).

¶ 19. In contrast, in the instant case, wife challenged the parties' stipulation before the family court approved it, held a final divorce hearing, or incorporated it into a final divorce order. Although wife primarily wanted the court to consider her maintenance request without disturbing the stipulation, the court recognized the impossibility of doing so, and wife still wanted to go forward with her request for maintenance. Under these circumstances, we conclude that the family court erred by refusing to consider wife's maintenance request because of her failure to prove duress, unconscionable advantage, or another basis for overturning a contract. Rather, the

---

diminish its role in resolving the parties' financial matters, which may require a maintenance award.

court should have given the parties an opportunity to present evidence on the fairness of their stipulation. Based on the evidence presented by the parties, the court had the discretion to reject the stipulation on grounds that it was inequitable in light of the relevant statutory factors.

¶ 20. Once a stipulation is incorporated into a final order, concerns regarding finality require that the stipulation be susceptible to attack only on grounds sufficient to overturn a judgment. See *Bucholt*, 152 Vt. at 241, 566 A.2d at 411 (holding that unchallenged stipulations accepted by trial court and incorporated into final divorce order are presumed to be fair, formal, and binding on parties); see also *Guthrie v. Guthrie*, 594 S.E.2d 356, 358 (Ga. 2004) (noting that trial court has discretion to reject settlement agreement before it becomes judgment of court). Further, after the close of evidence at a final hearing in which the parties have submitted a stipulation to the court for inclusion into a final order, considerations of judicial economy favor requiring a party who wishes to challenge the stipulation before issuance of the final judgment to establish grounds sufficient to overturn a contract. Cf. *Putnam v. Putnam*, 166 Vt. 108, 112-13, 689 A.2d 446, 448-49 (1996) (stating that court-approved stipulation challenged after attorneys were directed to prepare written order could be set aside only on grounds sufficient to set aside contract).

¶ 21. Before then, however, if one or both parties object to a previous agreement made in anticipation of divorce, the policy considerations that favor deference to the parties' "voluntary" agreement are less forceful. Cf. *Leighton v. Leighton*, 261 N.W.2d 457, 461 (Wis. 1978) (holding that stipulations in advance of trial cannot subscribe or oust court of its authority to resolve matters in divorce proceedings, and concluding that trial court would not abuse its discretion by refusing to recognize stipulation repudiated by one of parties). By the same token, under such circumstances, the policy considerations recognizing the family court's role in resolving marital disputes in contested divorce proceedings are heightened.

¶ 22. Accordingly, we hold that in a situation such as the instant case, when parties have executed a stipulation in anticipation of divorce regarding maintenance or the division of marital property, but one or both of the parties challenge the stipulation before the

family court has held a final hearing or incorporated the stipulation into a final divorce order, the court may reject the stipulation even if the challenging party fails to demonstrate grounds sufficient to overturn a contract. Of course, it is imperative that the court provide adequate findings as to why it has chosen to reject or accept the stipulation. To the extent that prior case law is contrary to this holding, that case law is overruled.

¶ 23. In determining whether to reject the stipulation, the family court should consider all of the circumstances surrounding execution of the stipulation. The family court is not obligated to reject a stipulation merely because the agreement does not divide the marital property or provide maintenance precisely in the manner or the amount that it would have had the agreement not existed. See *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996) (noting that trial court, to uphold consent decree, need not necessarily conclude that it would have arrived at same result if it were adjudicating controversy). Rather, the question is one of fairness and equity viewed from the perspective of the standards and factors set forth in our divorce statutes. If the parties' agreement is inequitable in light of those standards and factors, the family court is not compelled to accept the agreement simply because the challenging party cannot establish a formal contractual defense such as duress or unconscionable advantage. Further, the family court's determination that an agreement is unfair or inequitable is discretionary, and thus we review its decision to reject or accept a stipulation under an abuse-of-discretion standard.

¶ 24. Our holding is based on the simple truth that an agreement in anticipation of divorce is not the same as any ordinary contract. Public policy favors parties settling their own disputes in a divorce, but, as noted, the family court has a statutorily authorized role to play in divorce proceedings to assure a fair and equitable dissolution of the state-sanctioned institution of marriage. See *Croote-Fluno v. Fluno*, 734 N.Y.S.2d 298, 299 (App. Div. 2001) (recognizing that separation agreements are held to higher standard of equity than other contracts). This is particularly true when one or both parties challenge the fairness of agreements that are often made under trying and emotional circumstances. Cf. *In re Marriage of Bisque*, 31 P.3d 175, 178 (Colo. Ct. App. 2001) (stating that "conscionability standard applicable to separation agreements is different because of the public policy concern for safeguarding the interests of a spouse

whose consent to the agreement may have been obtained under more emotionally stressful circumstances") (internal quotations omitted).

¶ 25. Wife claims on appeal that the absence of maintenance in this case is manifestly inequitable, given the length of the marriage, her role as primary care giver during the marriage, and the wide disparity between the parties in income and earning capacity. See *Delozier v. Delozier*, 161 Vt. 377, 382-83, 640 A.2d 55, 57-58 (1994) (citing relevant factors for determining amount and duration of maintenance). Because the parties at the hearing on wife's motion to amend focused primarily on whether the family court could consider wife's request for maintenance rather than on whether their underlying agreement was equitable, and because the family court should consider, in the first instance, the fairness of the parties' agreement, we remand the matter for the court to reconsider wife's request for maintenance and the parties' agreement.

¶ 26. On remand, the family court need not consider husband's suggestion that wife should be precluded from objecting to the parties' stipulation because she ratified it by accepting half of husband's pension funds and by having husband refinance the mortgage on the marital home to relieve her of any further debt obligations associated with the property. Rather than negating the family court's authority to reject the agreement, any prior implementation of the agreement by the parties merely requires the court, should it reject the agreement, to consider the financial consequences of the parties' actions in equitably distributing the parties' assets. See *Rudin*, 132 Vt. at 32-33, 312 A.2d at 738 (rejecting contention that divorcing parties' implementation of their property agreement was binding on divorce court); *Leighton*, 261 N.W.2d at 461 (concluding that parties' partial implementation of their agreement did not alter trial court's authority to reject it, but only made determination of equitable division of marital assets more difficult).

*The parties' divorce decree is affirmed, but the family court's August 5, 2004 decision is reversed, and the matter is remanded for the court to reconsider wife's maintenance request and whether to accept or reject the parties' stipulation in whole or in part.*