## STATE OF VERMONT
## SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re von Trapp CU Permit | } | Docket No. 51-4-13 Vtec |
| (Appeal of Neal Mostov) | } | |

### Decision on Motion to Withdraw / Set Aside and Motion to Strike

Pending before the Court is Neal Mostov's post-judgment motion to vacate an August 26, 2013 Judgment Order from this Court adopting a Settlement Agreement entered into by the parties on August 15, 2013. The Settlement Agreement and Order resolved Mr. Mostov's appeal of an April 4, 2013 decision by the Town of Moretown Development Review Board ("DRB") that allowed Jordan and Dan von Trapp to increase the number of weekend events per calendar year to be held at their business at 216 Gove Road in Moretown, Vermont, pursuant to Conditional Use Permit #11-15 as amended by the DRB decision. Mr. Mostov has also moved the Court to strike certain portions of the record submitted by the opposing parties and Interested Persons during post-judgment proceedings.

The Settlement Agreement was the result of an approximately five-hour mediation session facilitated by a mediator chosen by all parties. The mediation took place at the offices of Mr. Mostov's legal counsel, L. Brooke Dingledine, Esq. Mr. Mostov participated in the mediation and was represented by Attorney Dingledine. Applicants Jordan and Dan von Trapp ("Applicants") and Interested Persons Dana Jinkins and John A. Taylor, Esq., a Massachusetts-licensed attorney, participated in the mediation without representation. The Settlement Agreement provides that "Applicants shall be limited to hosting twenty events per year" and that events must comply with certain restrictions regarding vehicles, parking, event times, and noise levels. Specifically, the Settlement Agreement requires that:

> At any event, the noise generated shall not exceed 70 decibels at the property boundary line shared by so-called Lot 1 at Applicant's premises and Appellant Mostov's property; and shall not exceed 55 decibels on the porch outside Appellant Mostov's residence.

In re von Trapp CU Permit, No. 51-4-13 Vtec (Vt. Super. Ct. Envtl. Div. Aug. 26, 2013) (Durkin, J.).

Mr. Mostov filed a "Motion to Withdraw from Settlement Agreement / Set Aside Settlement Agreement" on September 9, 2013. In his motion, Mr. Mostov first argues that "[t]he Settlement Agreement is erroneous" due to the absence of an additional term that was allegedly part of the parties' settlement agreement. This additional term allegedly provided that up to 12 of the 20 events may be amplified up to 70 decibels at the aforementioned property line, and the other 8 events must be unamplified. Mr. Mostov also argues that due to his emotional distress at the time of the mediation and an underlying psychological condition he was unable to fully understand the settlement terms and consequences. Thus, Mr. Mostov seeks to withdraw from the Agreement and/or to set it aside. (Appellant's Motion to Withdraw from Settlement Agreement / Set Aside Settlement Agreement at 1–3, filed Sept. 9, 2013).

Regarding the second argument, Mr. Mostov states that he was in Florida caring for his stepmother, Shirley, in the days leading up to the mediation. Id. at 2. Mr. Mostov further states that following her emergency treatment, he ultimately directed that Shirley be removed from life support.[1] Id. Mr. Mostov states that Shirley died on August 12, 2013 and that he attended her funeral on August 14, 2013, the day before mediation. Id. Mr. Mostov asserts that:

> The combination of [Mr. Mostov's] exhaustion, extreme emotional distress resulting from the death of [Shirley], and [Mr. Mostov's] underlying psychological conditions, rendered [Mr. Mostov] unable to fully understand the terms of the settlement or to carefully consider the ramifications thereto.

Id. at 3. Mr. Mostov asserts that he first raised these issues with his legal counsel and sought withdrawal from the Agreement on August 19, 2013, the same day his attorney filed the Settlement Agreement with the Court and prior to the Court's August 26 Judgment Order. Id. at 2–3. The Court received Appellant Mostov's motion on September 9, 2013; Interested Person Mr. Taylor filed an Opposition to Mr. Mostov's motion on September 27, 2013.

On October 8, 2013, Mr. Mostov filed a supplement to his initial motion to withdraw. In this filing, Mr. Mostov states that he was diagnosed with bi-polar manic-depression approximately 10 years ago. (Appellant's Verified Supplement to Motion to Withdraw from Settlement Agreement / Set Aside Settlement Agreement at 4, filed Oct. 8, 2013). He states that he takes daily medication to assist in stabilizing his moods, but that under extreme emotional conditions the medication's effect is lessened. Id. Mr. Mostov states that following Shirley's

---

[1] Mr. Mostov credibly testified at the hearing on the motion that he served as a healthcare proxy for Shirley at the time of her death.

death, he "was not able to regulate his mood, and was unable to concentrate or appreciate the issues involved in the legal case at issue herein." Id. In this filing, Mr. Mostov also asserts that "assuming" Applicants deny that the Settlement Agreement is an inaccurate reflection of the parties' agreement on amplification requirements, the parties "fail[ed] to have a meeting of the minds" at mediation due to "unilateral mistake," and therefore no contract was formed. Alternatively, Mr. Mostov argues that "the Settlement Agreement contains a mutual mistake(s)" and must therefore be rescinded.

The Court held a half-day evidentiary hearing on the motion on Friday, December 6, 2013 at the Environmental Division in Berlin. Mr. Mostov attended with Attorney Dingledine and her co-counsel, Lauren S. Kolitch, Esq. Jordan and Dan von Trapp and John A. Taylor, Esq. also attended, representing themselves. The mediator who facilitated the Settlement Agreement, Robert Halpert, Esq., also attended, but did not participate.[2]

The parties and Interested Persons filed post-hearing memoranda and responses with the Court, and the pending motion came under advisement on December 27, 2013.

## Discussion

We first note the judicial presumption that "an agreement reached by the parties is preferable to one imposed by the courts." Rhiele v. Tudhope, 171 Vt. 626, 627 (2000) (mem.). Thus, a court may reject a parties' pretrial agreement only where the record demonstrates a compelling reason for doing so. Kanaan v. Kanaan, 163 Vt. 402, 413 (1995). Upon review of the Settlement Agreement and in accordance with this principal, the Court adopted the Settlement Agreement in our August 26, 2013 Judgment Order. Our Order was not appealed and has become final. "A settlement agreement that is incorporated into a final judgment can be disturbed pursuant only to the procedures set forth in Vermont Rule of Civil Procedure 60(b)." Bidgood v. Town of Cavendish, 2005 VT 64, ¶ 6, 179 Vt. 530 (mem.). The interests of finality

---

[2] Prior to the hearing, Attorney Halpert submitted a letter to the Court providing notice of his position as to any testimony that may be requested of him. Attorney Halpert noted that the mediation is governed by the Vermont Mediation Act (12 V.S.A. §§ 5711–5723) and the parties' signed agreement to mediate. The Act privileges all "mediation communications" from disclosure in subsequent proceedings unless an exception applies or the privilege is properly waived. 12 V.S.A. §§ 5715–5717. According to the parties' mediation agreement, attached as Exhibit A to Attorney Halpert's letter, the parties agreed as follows:

> all discussions, written and oral communications, draft proposals or draft agreements shall not be disclosed or admissible in any court proceeding without the mutual consent of the parties, and that only a fully executed settlement agreement shall be discussed or admitted in evidence in any court proceedings between the parties.

and promoting agreement between parties both disfavor such disturbance.  <u>Rhiele</u>, 171 Vt. at 627; <u>Pouech v. Pouech</u>, 2006 VT 40, ¶ 20, 180 Vt. 1.  Moreover, Rule 60(b) must be applied "'guardedly' and only in 'extraordinary' circumstances."  <u>Miller v. Miller</u>, 2008 VT 86, ¶ 27, 184 Vt. 464 (citations omitted).

Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding" for a list of reasons.  V.R.C.P. 60(b).  Mr. Mostov argues that two subsections of Rule 60(b) apply to his request that this Court vacate the Settlement Agreement: (1) "mistake, inadvertence, surprise, or excusable neglect" and (6) "any other reason justifying relief from the operation of the judgment."  <u>Id</u>.  In addressing a party's claims under Rule 60(b)(1) and Rule 60(b)(6), our Supreme Court has stated:

> Rule 60(b)(1) provides for relief from judgment for the reasons of mistake, inadvertence, surprise, or excusable neglect.  However, Rule 60(b)(1) "does not operate to protect a party from tactical decisions which in retrospect may seem ill advised."  <u>Okemo Mountain, Inc. v. Okemo Trailside Condos., Inc.</u>, 139 Vt. 433, 436, 431 A.2d 457, 459 (1981).  Rule 60(b)(6) provides for relief from judgment for reasons not addressed in the first five subsections of Rule 60(b).  <u>Alexander v. Dupuis</u>, 140 Vt. 122, 124, 435 A.2d 693, 694 (1981).  Relief from judgment under Rule 60(b)(6) is intended to "prevent hardship or injustice and thus [is] to be liberally construed and applied.  Nevertheless, clause (6) of the Rule may not be used to relieve a party from free, calculated, and deliberate choices he has made."  <u>Estate of Emilo</u>, 146 Vt. at 423–24, 505 A.2d at 665–66.

<u>Sandgate School Dist. v. Cate</u>, 2005 VT 88, ¶ 7, 178 Vt. 625 (mem.).  For the reasons that follow, we find that Mr. Mostov has failed to demonstrate that he is entitled to relief from the Settlement Agreement and Judgment Order under Rule 60(b).

## I.  <u>Mistake, inadvertence, surprise, or excusable neglect</u>

First, the Court is not persuaded that the Settlement Agreement and subsequent Judgment Order are the result of the type of "mistake, inadvertence, surprise, or excusable neglect" contemplated by Rule 60(b)(1).  The relatively simple procedural history in this case includes the DRB decision, Mr. Mostov's appeal to this Court, a mediation session which Mr. Mostov attended with his counsel, the Settlement Agreement and Judgment Order, and Mr. Mostov's subsequent motions.  Mr. Mostov does not allege any mistake with respect to the court procedures in this case.  Instead, Mr. Mostov argues that he is entitled to the remedy of rescission based upon a failure to have a meeting of the minds due to mutual or unilateral

mistake. However, Mr. Mostov fails to allege any mistake under which he or the other parties operated when they entered the Settlement Agreement.

As to mutual mistake, "[t]he doctrine of 'mutual mistake' provides that '[w]here a contract has been entered into under a mutual mistake of the parties regarding a <u>material fact affecting the subject matter thereof</u>, it may be avoided . . . at the instance of the injured party, and an action lies to recover money paid under it.'" <u>Will v. Mill Condo. Owners' Ass'n</u>, 2004 VT 22, ¶ 5, 176 Vt. 380 (quoting <u>Rancourt v. Verba</u>, 165 Vt. 225, 228 (1996)) (emphasis added). In other words, the mistake must relate to "<u>a basic assumption on which the contract was made</u>" and the party seeking avoidance must show that the mistake materially affected the agreed exchange of performances. Restatement (Second) of Contracts § 152 (1981) (emphasis added).

As to unilateral mistake, a contract is voidable where (1) one party makes a mistake as to "<u>a basic assumption on which he made the contract</u>"; (2) the party seeking avoidance shows that the mistake materially affects the "agreed exchange of performances that is adverse to him"; (3) the mistake is not one as to which the party seeking relief bears the risk; and (4) due to the mistake, "enforcement of the contract would be unconscionable" or "the other party had reason to know of the mistake or his fault caused the mistake." Restatement (Second) of Contracts § 153 (1981); see also <u>Town of Lyndon v. Burnett's Contracting Co.</u>, 138 Vt. 102, 107 (1980) ("Although unilateral mistake does not preclude rescission, the rule is that where the mistake has resulted solely from the negligence or inattention of the party seeking relief, and the other party is without fault, relief will not be granted absent unusual circumstances that would make enforcement of the agreement manifestly unjust."). The only assertion of "mistake" that Mr. Mostov presents to the Court appears to be that he must have been mistaken in some regard, since he agreed to the von Trapps being allowed to operate up to 20 events per year, when the DRB had already restricted them to 12 per year. We see no mistake here, but rather a strategic decision made by Mr. Mostov in the course of negotiations that he now regrets. In return for Mr. Mostov's agreement to allow for an increase in the number of events, the von Trapps agreed to additional conditions that limited the manner in which all events were conducted. We gather that Mr. Mostov now regards this "tactical decision" as being "ill advised." In <u>Sandgate School District</u>, 2005 VT 88, ¶ 7, however, our Supreme Court concluded that a similar rationale was not a proper ground for voiding a final judgment.

5

The Court has before it a written Settlement Agreement that does not, on its own, suggest that either party was mistaken as to a <u>basic assumption</u> upon which the party signed. Moreover, Mr. Mostov fails to allege any such mistake. Thus, the Court is unable to construe the facts before it to find that any party entered the Settlement Agreement under a mistake that warrants not only rescission but also vacation of the judgment. Having found no "mistake" as to a basic assumption, we need not consider whether such mistake materially affected the agreed exchange, which party carried the risk, or, in the event of unilateral mistake, which party was at fault and whether relief is necessary to prevent manifest injustice. For these reasons, we find that Mr. Mostov has failed to demonstrate a mistake warranting relief under Rule 60(b)(1).

## II. <u>Other reasons justifying relief from operation of judgment</u>

As noted above, "[r]elief from judgment under Rule 60(b)(6) is intended to prevent hardship or injustice and thus [is] to be liberally construed and applied." <u>Sandgate School Dist.</u>, 2005 VT 88, ¶ 7. Thus, although we conclude that Mr. Mostov's arguments do not fit within the first five reasons in Rule 60(b), we nevertheless consider whether the circumstances justify relief under Rule 60(b)(6). Principles of contract law assist us in evaluating the validity of the Settlement Agreement in the first instance and determining whether justice will be promoted by enforcing the Settlement Agreement and Judgment Order. We also keep in mind the principle of finality and the court's preference for agreements among parties.

### Mutual Mistake, Unilateral Mistake, and Meeting of the Minds

As discussed above, we find no mistake that would warrant rescission of the Settlement Agreement. Therefore, we find that mutual mistake or unilateral mistake are not grounds for Mr. Mostov's relief from the Judgment Order under Rule 60(b)(6). We further find that the Settlement Agreement, signed by Neal Mostov, John Taylor, Dana Jinkins, Dan von Trapp, and Jordan von Trapp, demonstrates that the parties had a meeting of the minds as to all essential terms. See <u>Starr Farm Beach Campowners Ass'n v. Boylan</u>, 174 Vt. 503, 505 (2002) ("An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other."). The parties signed the same written agreement to resolve Mr. Mostov's appeal, providing that the permit issued to Applicants for their event business shall be subject to the condition that Applicants are limited to 20 events per year and that Applicants must meet specific limitations on parking, event times, and decibel levels. The assent of both parties to a written agreement indicates that there was a meeting of

the minds.  See <u>Sisters & Bros. Inv. Grp. v. Vt. Nat. Bank</u>, 172 Vt. 539, 543 (2001) (noting that parties' assent to same written contract suggested meeting of the minds and formation of contract on those terms) (citing Restatement (Second) of Contracts § 23 (1981)).  While the <u>written agreement</u> does not mention the division of 12 amplified and 8 unamplified events, we are unable to conclude that for this reason no contract was formed.  See <u>Smith v. Osmun</u>, 165 Vt. 545, 546 (1996) (holding that absence of specifications as to when property owner would leave property did not make settlement agreement vague or incomplete as to essential terms).  The absence of the alleged amplified/unamplified requirement does not render the written agreement impermissibly vague or incomplete regarding an essential term.  Thus, we conclude that the parties reached a meeting of the minds on all material terms of their agreement; we therefore cannot grant Mr. Mostov relief from the Settlement Agreement and Judgment Order on these grounds.

**Mental Capacity**

Mr. Mostov argues separately that his mental state and personal circumstances at the time of mediation and the formation of the Settlement Agreement are grounds for his requested relief.  We note that following Mr. Mostov's presentation of evidence on this issue, the Court concluded the hearing due to time constraints.  Applicants and Mr. Taylor therefore did not have an opportunity to present their own evidence at the hearing in response to Mr. Mostov's claims.  Applicants and Mr. Taylor did, however, have the opportunity to cross-examine Mr. Mostov and his psychiatrist, Dr. Kalibat.

We find credible much of the factual testimony of Mr. Mostov and of his treating psychiatrist, Dr. Kalibat.  However, as discussed more fully below, we do not believe that the facts as presented support Mr. Mostov's and Dr. Kalibat's opinion testimony; we conclude that Mr. Mostov failed to make the showing of mental incompetence necessary to disturb the Settlement Agreement and Judgment Order.

We have previously held that a person who suffers some cognitive deficiencies is not exempt from civil proceedings as a result of such deficiencies.  <u>Town of Northfield v. Drown</u>, No. 218-10-08 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Feb. 21, 2013) (Durkin, J.) (denying relief from judgment where party's doctor testified that party "ha[d] some memory, attention, and cognitive function deficiencies," but party otherwise presented himself as a healthy individual and "was coherent and logical in his choices of words and sentence structure").

7

Similarly, we conclude that all testimony presented tended to show that Mr. Mostov presented himself as a coherent, articulate individual during all portions of this litigation, including the five-hour mediation session, that Mr. Mostov never felt compelled prior to or at the mediation to advise the other parties or his own attorney of any alleged mental incapacities, and that he has no prior history of suffering from a mental incapacity so severe as to warrant relief from his own independent judgment.

The Second Restatement of Contracts § 15 (1981) provides that:

A person incurs only voidable contractual duties by entering into a transaction if by reason of mental illness or defect:

(a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.

See Bergeron v. Boyle, No. S 0990-99 CnC, slip op. at 13–15 (Vt. Super. Ct. May 21, 2002) (Teachout, J.), available at https://www.vermontjudiciary.org/TCDecisionCvl/2005-6-30-7.pdf (applying Second Restatement of Contracts § 15 to determine whether contract was void due to party's "clinically diagnosed depression" at the time of agreement).

Based on the testimony of Mr. Mostov and his treating psychiatrist, we find that Mr. Mostov has not demonstrated either of the circumstances under which a person incurs voidable contractual duties. We also find that any cognitive deficiencies he may have suffered at the time of the mediation do not rise to the level necessary to undo the agreement reached during that mediation and the subsequent Judgment Order.

While Mr. Mostov cites an Alabama case and a New York case for the proposition that a bi-polar/manic depressive individual may be incompetent to contract during a manic state, we do not find that Mr. Mostov has presented sufficient evidence to conclude that he was not competent to enter a contract at the time he negotiated and entered into the Settlement Agreement. Unlike the party seeking relief in Shoals Ford, Inc. v. Clardy, 588 So. 2d 879 (Ala. 1991), Mr. Mostov presented no evidence of his failure to take medication, of threats towards others or other abnormal or erratic behavior, or of instability that resulted in hospitalization during the time surrounding the mediation and settlement. See also Faber v. Sweet Style Mfg. Corp., 242 N.Y.S.2d 763 (1963) (finding that party entered land sale contract under the compulsion of his bi-polar "psychosis" where party, previously cautious and reserved, refused

8

to see his treating doctor, began driving at high speeds, bought three expensive cars, began converting a Long Beach bathhouse and garage property into a 12-story cooperative, contracted for sale of land to construct a 400-room hotel and golf course, sought his doctor's help for his wife because she was holding him back, and was thereafter hospitalized). Had Mr. Mostov presented the Court with such evidence, we might have a foundation for concluding that Mr. Mostov was at the time of these negotiations suffering from a mental deficiency so significant as to incapacitate his reasoning and ability to make a binding agreement. We further note that with no evidence of such abnormalities in Mr. Mostov's behavior, no other individuals present at the mediation had notice that he was then suffering from a significant mental deficiency.

Although Dr. Kalibat diagnosed Mr. Mostov as bi-polar/manic-depressive approximately 10 years ago, Mr. Mostov takes a prescribed medication, Lamictal, to temper his emotional swings. He is a compliant patient of Dr. Kalibat and only sees Dr. Kalibat in his medical practice one to two times per year. As Shirley's healthcare proxy, Mr. Mostov was responsible for important healthcare decisions, including having Shirley removed from life support. He fulfilled these fiduciary obligations without incident. He also arranged Shirley's memorial service and funeral. Mr. Mostov has never been subject to a guardianship, and neither he nor anyone else has ever sought such a guardianship. In fact, the most erratic behavior that Mr. Mostov presented to the Court, through the testimony of Dr. Kalibat, was that he once gave the shoes he was wearing to a hitchhiker who needed the shoes. We are unaware that similar behavior has been the basis for a court allowing a party to avoid his or her obligations under a contract.

Prior to the mediation, Mr. Mostov did not inform his counsel that he is bi-polar or that he sometimes experiences manic episodes. He did not advise his attorney or the other parties that he was physically or mentally exhausted due to his extensive travels and personal losses. We can only conclude that he chose not to do so because he did not consider his condition so severe that he should be protected in any way from his own actions at any other time up through his settlement of this litigation.

Mr. Mostov experienced a serious life event when Shirley, whom he considered a mother, died three days before the mediation. Mr. Mostov did not sleep his normal amount in the days leading up to the mediation. Although Dr. Kalibat has not observed Mr. Mostov during one of Mr. Mostov's manic episodes, he credibly testified that a significant emotional

9

event coupled with lack of sleep may trigger such an episode. Thus, based on Mr. Mostov's and Dr. Kalibat's testimony, Mr. Mostov may have been experiencing a manic episode at the time of mediation. But we received no evidence that any manic episode he suffered, either before or during the mediation session, was of such a severe nature as to cause him to be "unable to understand in a reasonable manner the nature and consequences of the transaction" such that he may be allowed to avoid the contractual commitments agreed to during the mediation. Restatement (Second) of Contracts § 15 (1981).

Dr. Kalibat also credibly testified that manic episodes likely impact Mr. Mostov's judgment in decision making and actions. Mr. Mostov and Dr. Kalibat described Mr. Mostov's giving away of personal belongings as both an indicator of a manic episode and the primary example of its impacts on his judgment. However, in his testimony regarding the alleged episode at issue and its impacts on Mr. Mostov's mental capacity, Dr. Kalibat only relied on a meeting with Mr. Mostov on December 5, 2013, the day before the evidentiary hearing, rather than a meeting near the time of the August 15 mediation. Moreover, we received no credible evidence that Mr. Mostov's illness incapacitated him in a manner that was either apparent to others present or rose to the level that would excuse him from his contractual obligations.

Following the important decision to have Shirley removed from life support and his coordination of her service and funeral in Florida, Mr. Mostov returned to Vermont and arrived at the mediation on time. He participated for five hours without exhibiting erratic behavior and without others questioning his mental ability. He read and signed the agreement, and he remembers agreeing to the provision concerning 20 events per year. Moreover, Mr. Mostov did not seek or receive any medical attention around this time. We thus conclude that while Mr. Mostov's judgment may have been impacted by the stresses he suffered prior to the mediation and his underlying medical condition, he has failed to show that he was "unable to understand in a reasonable manner the nature and consequences" of the mediation and Settlement Agreement at the time of these negotiations. Restatement (Second) of Contracts § 15 (1981).

Moreover, various circumstances suggest that no one else knew or suspected that he was experiencing such an episode. Mr. Mostov did not inform counsel or the other parties that Shirley had recently died. He did not suggest postponing the mediation. He arrived on time and participated in a five-hour mediation session without incident; he remembers consulting with his attorney and agreeing to and signing an agreement that authorized the von Trapps to

10

hold up to 20 events per year. He has not suggested any reason why Applicants, Ms. Jinkins, Mr. Taylor, or even his own counsel would have had reason to know of these prior circumstances or of their disabling impact upon him. Thus, we conclude that Mr. Mostov has not demonstrated both that he was "unable to act in a reasonable manner in relation to the transaction <u>and</u> [that] the other party [had] reason to know of his condition." Restatement (Second) of Contracts § 15 (1981) (emphasis added).

We know of no basis in Vermont precedent, and Mr. Mostov has cited none, for concluding that he has demonstrated the requisite "extraordinary circumstances" to disturb our Judgment Order and the underlying Settlement Agreement.

Finally, we also find that Mr. Taylor's suggestion during the mediation of alternative development plans do not form the coercion or duress necessary to void a contract and vacate a final order.

For all of the reasons stated above, we **DENY** Mr. Mostov's motion to vacate the August 26, 2013 Settlement Agreement and Judgment Order.

### III. <u>Motion to Strike</u>

Mr. Mostov also moves the Court to strike certain statements made by Applicants and Interested Persons in their post-hearing filings. Because we find that the assertions regarding Mr. Mostov's motive in these post-judgment proceedings are irrelevant and set forth unsupported facts, we **GRANT** Mr. Mostov's motion to strike those portions of the record.

### Conclusion

For the reasons discussed more fully above, we **DENY** Mr. Mostov's Motion to Withdraw/Set Aside the Settlement Agreement and Judgment Order. We **GRANT** Mr. Mostov's Motion to Strike those portions of the filings of Applicants and Interested Persons regarding alleged motivations in these post-judgment proceedings.

This completes the current proceedings before this Court.

Done at Burlington, Vermont this 5th day of February, 2014.

_____
Thomas S. Durkin, Environmental Judge

11